## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY HOAR, on behalf of himself and all others similarly situated, | Civil Action No. _____ |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMAND** |
| LAUNCH PAD PAYMENT SERVICES CORPORATION and HOTMART BV, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Timothy Hoar on behalf of himself and all others similarly situated bring this class action complaint against Launch Pad Payment Services Corporation and Hotmart BV (collectively "Defendant" or "Hotmart")[1], and alleges the following:

## INTRODUCTION

1.     Plaintiff brings this action on behalf of themselves, the general public, and classes of similarly situated consumers against Hotmart regarding its automatic renewal scheme with respect to Hotmart products and subscriptions.

2.     Plaintiff alleges that Hotmart deceptively enrolls customers into automatically renewing subscriptions in violation of state automatic renewal protection laws. Customers who purchase products and services using the Hotmart platform are not aware that they will be enrolled in automatically renewing subscriptions at the time of purchase. Further, Hotmart violates New York automatic renewal laws by enrolling consumers in automatic-renewal or continuous service subscriptions without providing the

---

[1] Defendants are part of the same corporate family of companies and thus referred to here as a single defendant.

"clear and conspicuous" disclosures mandated by New York law. Hotmart's failure to disclose the terms of its subscriptions and its unauthorized charges also violate the Washington Consumer Protection Act ("WCPA") and the Electronic Funds Transfer Act ("EFTA").

3.    Hotmart also makes it unreasonably difficult to cancel subscriptions and fails to cancel subscriptions when requested by their customers.

4.    Specifically, when a consumer completes a purchase on or using Hotmart's platform, Hotmart, surreptitiously and without the consumer's consent, enrolls the consumer in a weekly or monthly subscription, which charges an automatically renewing fee. Further, upon a consumer's discovery of the hidden subscription enrollment and associated fee, they must then navigate Hotmart's exceedingly difficult and unnecessarily confusing process for cancelling the subscription.

5.    Additionally, Hotmart regularly fails to cancel subscriptions when requested by consumers and continues to charge consumers unwanted weekly and monthly fees even after they attempt to cancel their subscription. In so doing, Hotmart systematically violates New York automatic renewal law, New York GBL, WCPA, and EFTA by engaging in a pattern and practice of exploiting its members by continuing to charge them monthly fees, without consumers' consent, after they have canceled their subscriptions.

6.    Defendant Hotmart is engaging in a pattern and practice of exploiting consumers by failing to obtain consumers' affirmative consent before enrolling them in an automatically renewing subscription; failing to provide consumers with clear and conspicuous disclosures of the terms of the purchase before enrollment; failing to obtain consumers' consent to the terms of the purchase before charging consumers' credit cards, debit cards, or third-party payment accounts; failing to provide consumers with an acknowledgment that discloses how to cancel and allows consumers to cancel the subscription before the consumer is charged automatically renewing subscription fees by Hotmart; using an unreasonably difficult cancellation process; and failing to cancel consumers' subscriptions even after they request that

they be cancelled.

7.      On behalf of themselves and the proposed classes, Plaintiff seeks damages, restitution, statutory damages, attorneys' fees, punitive damages, and injunctive relief for violation of (i) New York's Gen. Bus. Law § 349; (ii) the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*; (iii) Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.020, *et seq.*; and unjust enrichment.

## **PARTIES**

8.      Plaintiff Timothy Hoar is a citizen and resident of Winlock, Washington.

9.      Defendant Launch Pad Payment Services Corporation is a Delaware corporation with its principal place of business and headquarters in New York City, New York. Hotmart's platform sells products and services throughout the United States.

10.     Defendant Hotmart BV is a Dutch company with its registered office at Frederiksplein 1, 1017, XK Amsterdam, Amsterdam, Netherlands, KVK CCI.

## **JURISDICTION AND VENUE**

11.     This Court has original jurisdiction over this action because (1) the proposed classes are comprised of at least 100 members, (2) at least one member of the proposed class is a citizen of a state other than New York, and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) and (6).

12.     Venue is proper in the United States District Court for the Southern District of New York because Hotmart is subject to personal jurisdiction in the Southern District, because Hotmart regularly conducts business in the Southern District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Southern District. 28 U.S.C. § 1391. Additionally, Hotmart's own terms require venue of any lawsuit to be the Southern District of New York or New York state courts.[2]

---

[2] *See* https://perma.cc/RK7N-AVXP.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.    OVERVIEW OF HOTMART PLATFORM**

13.    Hotmart describes itself as a global technology company and leader in the "Creator Economy."[3]

14.    Hotmart provides a platform for users to list and sell their digital products and services, including e-books, online courses, video lessons, and more. As of 2023, Hotmart had more than 35 million users, and more than 580,000 digital products registered on its platform.[4]

15.    Consumers can visit Hotmart's website (https://hotmart.com/en) to browse for courses or digital products, or they could respond to one of the many advertisements on social media websites that directs users to Hotmart products.

16.    Hotmart calls people who make and sell digital content using their platform "Creators."[5] Creators can utilize Hotmart's platform, tools, and payment system to set up a page for their products and being selling to the public. These products can be sold on Hotmart's marketplace, or Creators can use their own website where Hotmart handles the checkout page and billing.

17.    Hotmart is free for Creators to use, but Hotmart takes a 9.9% fee from any sale using their platform.[6]

**A.    Checkout Process and Subscriptions**

18.    Unbeknownst to purchasers, many Hotmart products are actually recurring subscriptions where Hotmart automatically bills a consumer's debit card, credit card, or third-party payment account.

---

[3] "For the fourth consecutive year, Hotmart is among the world's fastest-growing companies in digital learning," HOTMART (Jan. 16, 2023), https://press.hotmart.com/for-the-fourth-consecutive-year-hotmart-is-among-the-world-s-fastest-growing-companies-in-digital-learning.

[4] *Id.*

[5] How Does Hotmart Work? Everything You Need to Know, Hotmart (Oct. 30, 2022), https://hotmart.com/en/blog/how-hotmart-works.

[6] *Id.*

19.    For example, a user browsing the Hotmart Marketplace[7] might come across a list of courses, products, or videos that look like this:



20.    The above screenshot lists two products—"Xzode Lab" and "Lose 18lbs in 30 days"—for the prices of $2.00 and $3.99 respectively.

21.    However, if a consumer clicks on the Xzode Lab product, they will see the following screen:



---

22.    For the first time, Hotmart has now placed in small letters under the price, the words "per month." Presumably this indicates that the product is not just $2.00 as was shown on the previous screen, but is instead a recurring purchase.

23.    If a consumer clicks "Go to cart", they will be presented with the following checkout screen:

[Image on Next Page]



🇺🇸 Change country ▾

**Xzode Lab**
Author: Xzode
**$2.00 / month**
(+ applicable taxes. Click here for more information)

Your full name

Enter your full name

Your email address

Enter the email to receive your purchase

Confirm your email

Enter your email again

Phone number

🇺🇸 +1 ⌄    (201) 555-0123

Address

Street and house number

Address line 2 (optional)

Apartment, suite, etc.

E.g.: Apartment B2, second floor.

Zip Code          City          State
Enter your ZIP code here    Where do you live?    Select your state ⌄

🏷 Do you have a discount coupon? ⌄

💳 **Card**    🔥 Hotmart Account    🅿 PayPal    ⊕ Show more

Card number

Enter numbers only

Name of account holder

Enter name printed on the card

Month    Year    CVV ⓘ
MM ⌄    YY ⌄    CVV

Order details

Xzode Lab                                    $2.00 / month

**Buy now**

Need any help?

Contact the creator about the product
Learn how to fill out checkout process
Contact Hotmart about payment issues  (CKTID-T687479B9H87z5aaf01-1718826259184-6919) ⓘ
Please copy and paste the code above when submitting a request

By clicking 'Buy Now' I declare that I (i) understand that Hotmart is processing this order on behalf of Xzode and has no responsibility for the content and/or control over it; (ii) agree to Hotmart's Terms of Use , Privacy Policy and other company policies and (iii) am of legal age or authorized and accompanied by a legal guardian. Learn more about your purchase here .

Hotmart © 2024 - All rights reserved
2024-06-19T19:45:29.757Z  REF.

24.     On the final checkout screen Hotmart directs consumers to enter their payment information and states in small print that "Hotmart is processing this order on behalf of Xzode."

25.     Nowhere on the checkout page or any of the previous screens does Hotmart disclose that this purchase will be automatically renewed each month. Additionally, Hotmart does not disclose that it will automatically charge a consumer's card or payment method without any input from the consumer.

26.     Further, Hotmart does not disclose clearly and conspicuously anywhere in its checkout page how a consumer can cancel this recurring charge.

27.     This is the standard product and checkout page for Hotmart products. As shown below, many Hotmart products that charge customers weekly or monthly use (or omit) the same disclosures shown above:





28.    Hotmart's website and checkout process is designed to confuse and deceive consumers into handing over their payment information to Hotmart so that Hotmart may repeatedly bill their account.

29.    While users may post their own products or courses on Hotmart's platform, all checkout services, payment processing, and recurring billing and cancellation is performed by Hotmart.

30.    However, Hotmart's marketplace is not the only place users shop for products. Hotmart's platform sellers utilize Facebook and other social media advertising extensively to advertise their products.

31.    For example, some of the advertisements on Facebook include:

[Image on Next Page]



32.    The advertisements link to a product at the Hotmart website. Users who click on these advertisements can enter their payment information on Hotmart's website in order to make a purchase.

33.    Many times this results in users clicking on an advertisement and making a purchase that does not contain sufficient disclosures—and sometimes no disclosures—and ultimately being enrolled in automatically renewing subscription.

34.    In fact, websites such as Trustpilot and PissedConsumer are filled with thousands of complaints from consumers who were unknowingly enrolled in Hotmart's subscription scheme. Some even had products added on to their purchase, or were randomly charged for various amounts at varying intervals by Hotmart.

35.    The following online consumer complaints are a sample of the types of problems users of Hotmart's services and platform complain about:



**PW** **Paul Wiser**
1 review   ◎ US

★☆☆☆☆                                                    Mar 20, 2024

**Hotmart is a professional money…**

Hotmart is a professional money grabbing establishment that sells products and services that have little or no value. Then when you give them your credit card information they charge you a $27.00 monthly membership fee that gives you nothing in return. I am disputing this pending charge before it even posts. Scammers!!!!

**Date of experience:** February 19, 2024

👍 Useful **3**     ⌁ Share                                                    ⚑



**BR** **Brenda**
5 reviews   ◎ US

★☆☆☆☆                                                    Mar 23, 2024

**Sell phones but never send.**

Ad too good to be true but who wouldn't buy a new 2 lens iPhone for $118.00? Total scam. Never sent. Website supports seller not refunding after his designated date. Even if you never received anything.
They also start taking money from your account a week after receiving your payment. Terrible!

**Date of experience:** March 23, 2024

👍 Useful **2**     ⌁ Share                                                    ⚑



**Richard Vaughn**
1 review    ◎ US

                                                    Apr 30, 2024

### Hotmart delivers invoices onlyu

I ordered 1 video $7.99 and 1 product $19.95
Never received product, just Invoices every week.
Their site is not easily accessed to converse or cancel. I will delete on PayPal.

**Date of experience:** April 30, 2024

👍 Useful **2**    ⌁ Share                                             ⚑



**Christopher Lee Johnson** ✅
1 review    ◎ US

★☆☆☆☆                                                              Apr 5, 2024

### This company is as big a scam!

This company is as big a scam in that product I thought I purchased was something else. The NeoCash Card turned out to be a weight loss book written in Portuguese! I neither read or speak Portuguese!

I ask Hotmart for a refund, and what do I get? A bot that says my purchase made on March 26 2024, had an expiration date of 03/04/2024! Please tell how a period expires weeks before the purchase was made.

If I ever see any product use Hotmart as the checkout I WILL NOT BUY IT.

But, I do thank them for inspiring me to create an advocacy group that stops your kind of predatory transactions possible!

**Date of experience:** March 26, 2024



**Dollie C Owp**
Verified Reviewer

# I have never used the product and have been trying to cancel for months. The payment is coming out of my checking account ($10.21).

May 13, 2024        **1.0**

Hotmart is the most difficult company to get in touch with. Trying to talk with an individual has been impossible!!!

**Loss:** $41

**Cons:** Not able to speak with a person

**Preferred solution:** Full refund

 **Comment**     Helpful

---

**Matthew T Wuh**
Verified Reviewer

# Refund

May 07, 2024        **1.0**

After making a initial purchase I was taken to another landing page where I didn't see an option to decline so I ended up being taken to yet another landing page and another and another. When all was said and done I ended up with 4 purchases. And the refund. Well if your expecting it not to happen for a while then your in luck because process time seems to drag out to about a month. I won't even mention the language.

**Cons:** Refund taking time a lot

**Preferred solution:** Full refund

**User's recommendation:** Waist of time and money

 **Comment**     Helpful



**Lameisha Asj**
⊙ Houston, Texas                                              ⋮

## Questions about Bill

May 03, 2024       1.0

Explain is a week payment I need to cancel my subscription I didnt understand is every week I have to pay. I do not have the money to pay every week so refund me this week payment and cancel my subscription.

| Comment |    👍 Helpful

36.    These reviews are merely a sampling of the negative comments consumers have left about Defendant's deceptive billing and cancellation policies and practices.

37.    Defendant is well aware that its website, billing practices, and automatic renewal scheme deceives consumers.

**II.    <u>HOTMART DID NOT DISCLOSE AUTOMATICALLY RENEWING SUBSCRIPTIONS AND FAILED TO HONOR PLAINTIFF'S REQUESTS TO CANCEL THEIR SUBSCRIPTIONS</u>.**

38.    In addition to its lack of disclosures, Defendant routinely fails to cancel Hotmart user subscriptions, and charges consumers for products that they were unknowingly enrolled in. Plaintiff's experiences are demonstrative.

**A.    <u>Plaintiff Hoar's Experience</u>**

39.    On December 23, 2023, Plaintiff Timothy Hoar purchased the EFT Account Product through Hotmart for $6.30.

40.    Plaintiff provided Hotmart with his debit card information for the purchase of this one product. He reasonably believed he was making a single payment for access to the EFT Account Product.

41.    However, at the time of purchase Plaintiff was actually signed up for an automatically recurring subscription that charged him every month.

14

42.    On December 23, 2023, Plaintiff received an email from Hotmart thanking him for his purchase and providing an invoice. The email and invoice are attached here as Exhibits A & B respectively.

43.    The email and invoice failed to include the automatic renewal offer terms or information on how to cancel the subscription in violation of the New York ARL and WCPA. *See* Ex. A.

44.    Further, Hotmart did not disclose on its website that purchasers would be charged an automatically renewing subscription each month until they cancelled.

45.    Additionally, without Plaintiff's knowledge or consent, he was also signed up for multiple other services including services called "Unlimited Updates", "VIP Coaching", and "Profit Multiplicator", among others on December 23, 2023. Plaintiff was automatically enrolled in these additional subscriptions, which charged him $15.76 a month and $67 a month.

46.    Defendant charged Plaintiff for these subscription without his affirmative consent. Further, Hotmart failed to include the automatic renewal offer terms or information on how to cancel the subscription. *See* Exs. C & D.

47.    Upon information and belief, Plaintiff was signed up for multiple additional subscriptions without his knowledge or affirmative consent, when he first purchased the EFT Account.

48.    Plaintiff was never able to access or use any of these products.

49.    Unbeknownst to Plaintiff Hoar, Hotmart automatically charged his debit card recurring monthly charges of $6.80, $15.76, and $67 every month from December 2023 forward.

50.    Upon finding out these products were subscriptions, Plaintiff attempted to cancel these subscriptions in December 2023.

51.    However, Hotmart continued to charge Plaintiff for multiple subscriptions in January and February 2024.

52.    Plaintiff attempted to cancel his subscriptions again via email on February 18, 2024.

However, Hotmart continued to charge his account for multiple subscriptions he did not authorize.

53.  Plaintiff attempted to cancel his EFT subscription via email on March 3, 2024.

54.  However, Hotmart continued to automatically charge Plaintiff every month.

55.  Hotmart's exceedingly difficult cancellation process made it impossible for Plaintiff to cancel this subscription.

56.  Despite cancelling his subscription and sending multiple emails related to his service problems, Plaintiff found that Hotmart had not honored his cancellation request. Plaintiff has been automatically charged monthly fees by Hotmart since at least December 2023. To date, Plaintiff is still automatically charged by Hotmart every month.

57.  In addition to the subscriptions mentioned above, Plaintiff was automatically enrolled in additional subscriptions that he did not choose or affirmatively consent to. As a result, Plaintiff cannot cancel, much less identify, all of the number of unauthorized charges Hotmart has made on his debit card.

58.  As a result, Plaintiff has been and continues to be injured by Hotmart's deceptive billing schemes.

## III.  DEFENDANT'S BILLING AND CANCELLATION POLICIES AND PRACTICES DECEIVE CONSUMERS AND VIOLATE STATE CONSUMER PROTECTION AND AUTOMATIC RENEWAL LAWS

59.  New York's consumer fraud statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."[8]

60.  Similarly, states across the country, including Washington, have enacted legislation declaring unfair, deceptive, false, or misleading acts or practices in the conduct of trade or commerce to be unlawful.[9]

### A.  New York's Automatic Renewal Law

---

[8] N.Y. GEN. BUS. LAW § 349.
[9] *See* WASH. REV. CODE § 19.86.020.

61.    Furthermore, in February of 2021, New York enacted strict laws governing automatic renewal and continuous service offers and terms in paid subscription or purchasing agreements with consumers ("N.Y. Automatic Renewal Law" or "ARL").[10]

62.    New York's ARL provides: "It shall be unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:

      a.    Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change up on conclusion of the trial;

      b.    Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time; or

      c.    Fail to provide an acknowledgement that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free gift or trial, the business shall also disclose in the acknowledgement how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

63.    "Automatic renewal," as used in the ARL, means "a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."[11]

64.    "Continuous service," as used in the ARL, means "a plan or arrangement in which a

---

[10] N.Y. GEN. BUS. LAW §§ 527, *et seq.*

[11] *Id.* § 527(1).

subscription or purchasing agreement continues until the consumer cancels the service."[12]

65.    "Automatic renewal offer terms," as used in the ARL, means the following clear and conspicuous disclosures:

      a.      That the subscription or purchasing agreement will continue until the consumer cancels;

      b.      The description of the cancellation policy that applies to the offer;

      c.      The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known;

      d.      The length of the automatic renewal term of that the service is continuous, unless the length of the term is chosen by the consumer; and

      e.      The minimum purchase obligation, if any.[13]

66.    The ARL requires "clear and conspicuous" disclosure of automatic renewal offer terms, meaning "in larger type that the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."[14]

67.    Regarding cancellation terms and procedures, the ARL requires a business making an automatic renewal offer or continuous service offer to (1) "provide a toll-free telephone number, electronic email address, a postal address only when the seller directly bills the consumer, or another cost-effective, timely, and easy-to-use mechanism for cancellation," and (2) allow consumers who accept automatic renewal or continuous services offers online "to terminate the automatic renewal or continuous

---

[12] *Id.* § 527(5).

[13] *Id.* § 527(2).

[14] *Id.* § 527(3).

service exclusively online."[15]

68.    The ARL deems any "goods, wares, merchandise, or products" sent by a business to a consumer under a continuous service agreement or automatic renewal of a purchase "without first obtaining the consumer's affirmative consent" to be "an unconditional gift to the consumer."[16]

B.    **Washington's Consumer Protection Act**

69.    The Washington Consumer Protection Act provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."[17]

70.    Defendant engages in unfair or deceptive acts or practices in the conduct of trade or commerce by, *inter alia*, (i) failing to provide consumers notice to consumers, prior to the completion of a purchase, that products will automatically renew for a monthly or weekly, recurring fee; (ii) enrolling consumers in an automatically recurring subscription without the consent or authorization of consumers; and (iii) continuing to charge consumer's subscriptions after they have cancelled them.

71.    As a result of Defendant's unfair or deceptive acts or practices, Washington consumers are enrolled in automatically renewing Hotmart product subscriptions and charged recurring subscription fees for months without their knowledge or authorization.

72.    As further alleged below, Hotmart's practices systematically violate the Washington Consumer Protection Act.

C.    **Hotmart Violates New York ARL and Washington Consumer Protection Act.**

73.    Certain products sold on Hotmart's platform are automatic renewal subscriptions or continuous service offers under the New York ARL, and Defendant is required to comply with the

---

[15] *Id.* §§ 527-a(2)–(3).

[16] *Id.* § 527-a(6).

[17] WASH. REV. CODE § 19.86.020.

provisions of New York ARL in relation to subscription services Defendant offers to consumers.

74.    Defendant's conduct and practices alleged above violates the New York ARL by (i) failing to provide clear and conspicuous disclosures of the automatic renewal terms and cancellation terms at checkout; (ii) charging customers for automatic renewal subscriptions without first obtaining the customers' affirmative consent; (iii) failing to provide an acknowledgement that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer; (iv) failing to allow Plaintiff and Class Members to cancel their subscriptions; (v) failing to honor Plaintiff's and Class Members' subscription cancellations and continuing to post unauthorized charges to Plaintiff's and Class Members' financial accounts after the cancellation of their subscriptions.

75.    Defendant also engages in unfair, deceptive, false, and/or misleading acts or practices in the conduct of trade or commerce in violation of the Washington Consumer Protection Act by, *inter alia*, (i) failing to provide clear and conspicuous disclosure to the purchaser of the automatic renewal terms and cancellation terms of a product; (ii) failing to allow Plaintiff and Class Members to cancel their Hotmart subscriptions; (iii) failing to honor Plaintiff's and Class Members' subscription cancellations; and (iv) continuing to post unauthorized charges to Plaintiff's and Class Members' financial accounts after the cancellation of their subscriptions.

76.    As a result of Defendant's unlawful conduct and practices alleged above, Plaintiff and Class Members have been wrongfully charged unauthorized, recurring fees for a subscription service.

**D.    Hotmart Violates the Electronic Funds Transfer Act ("EFTA") and Regulation E.**

77.    The purpose of the Electronic Funds Transfer Act ("EFTA") is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights." 15 U.S.C. § 1693(b).

78.     Regulation E of EFTA's implementing regulations defines "Electronic funds transfer" to mean "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account." 12 C.F.R. § 205.3(b).

79.     15 U.S.C. 1693e(a) states:

A preauthorized electronic funds transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer. The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

80.     Similarly, the implementing regulation, 12 C.F.R. § 205(10)(b), states:

(b) *Written authorization for preauthorized transfers from consumer's account*. Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer.

81.     Defendant did not provide a copy of the authorization for preauthorized transfers to Plaintiff or Class Members at the time of signup.

82.     In multiple instances, Defendant debited bank accounts of Plaintiff and Class Members on a recurring basis without obtaining a written authorization signed or similarly authenticated by the Plaintiff or Class Members for preauthorized electronic fund transfers from the accounts of Plaintiff or Class Members, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

83.     In multiple instances, Defendant debited Plaintiff's and Class Members' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by Plaintiff or Class Members for preauthorized electronic funds transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

84.     In multiple instances, Defendant debited Plaintiff's and Class Members' bank accounts on a recurring basis after Plaintiff and Class Members revoked consent to such debits, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

## CLASS ALLEGATIONS

85.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

86.     The proposed classes ("Classes") are defined as follows:

Automatic Renewal Class: All persons in the United States who, within the applicable statute of limitations were enrolled in an automatically renewing subscription by Hotmart, and were charged one or more times by Hotmart.

The Cancellation Class: All persons in the United States who, within the applicable statute of limitations period, cancelled their Hotmart paid subscription but were subsequently charged by Hotmart ("Cancellation Class").

87.     Plaintiff also brings his claims on behalf of a Washington subclass.

88.     Excluded from the Classes are (i) Defendant and Defendant's subsidiaries and affiliates; (ii) Defendant's officers, directors, and employees; (iii) entities in which Defendant has a controlling interest; (iv) the judicial officer(s) to whom this action is assigned; and (v) the immediate family members, legal representatives, heirs, successors, or assigns of any party excluded under (i)–(iv).

89.     Plaintiff reserves the right to modify or amend the definitions of the proposed Classes and to add subclasses before this Court determines whether certification is appropriate.

90.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

91.     As to numerosity: The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort

to Defendant's records. Defendant has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

92.     As to commonality: The questions here are ones of common or general interest such that there is a well-defined community of interest among Class members. These questions predominate over questions that may affect only individual class members because Hotmart has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to: (i) whether Defendant engaged in the conduct alleged herein; (ii) whether Defendant's conduct was deceptive; (iii) whether Defendant's conduct caused class members harm; (iv) whether Defendant's conduct violated state consumer protection laws; (v) the appropriate measure of damages; and (vi) whether Plaintiff and the class are entitled to declaratory relief, injunctive relief, restitution, or a combination of these.

93.     As to typicality: Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendant, as described herein. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and absent Class Members are substantially the same because the challenged practices are uniform for Plaintiff and Class Members. Accordingly, in pursuing his own self-interest in litigating the claims, Plaintiff will also serve the interests of the Class.

94.     As to adequacy: Plaintiff is a more than adequate representative of the Class pursuant to Rule 23 in that Plaintiff is a purchaser of Hotmart products and has suffered damages as a result of Hotmart's deceptive practices. Additionally, (i) Plaintiff is committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated; (ii) Plaintiff has retained competent counsel experienced in the prosecution of class actions; (iii) there is no conflict of interest between Plaintiff and the unnamed members of the Class; (iv) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and (v) Plaintiff's legal counsel has the financial and legal resources to

meet the substantial costs and address the legal issues associated with this type of litigation.

95.    As to predominance: The matter is properly maintained as a class action under Rule 23 because the common questions of law and fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class Members.

96.    As to superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter pursuant to Rule 23 because the injuries suffered by the individual Class Members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class Members to individually seek redress for Defendant's wrongful conduct.

97.    Additionally, the Class is numerous enough to render joinder of all members or the maintenance of separate suits impracticable. Even if any individual person or group of Class Members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive resolution by a single court. Further, the difficulties likely to be encountered in the management of this action as a class action are minimal.

98.    In contrast, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party or parties opposing the Class and would lead to repetitious trials of many common questions of law and fact.

99.    Plaintiff knows of no difficulty to be encountered in the management or maintenance of this action that would preclude its maintenance as a class action. But absent a class action, Plaintiff and Class Members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

100.    For all these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this action.

101.    As stated above, Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

102.    All conditions precedent to bringing this action have been satisfied, waived, or both.

**FIRST CLAIM FOR RELIEF**
**Deceptive Acts or Practices – N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiff and the Classes)**

103.    Plaintiff hereby incorporates by reference the preceding paragraphs as if fully restated here.

104.    New York law applies to the class because New York has a significant interest in regulating the conduct of businesses operating within its borders. Moreover, the principal place of business of Hotmart's U.S. business is in New York, which constitutes the "nerve center" of its business activities— the place where its high-level officers direct, control, and coordinate the corporation's activities, including decisions related to cancellation policies.

105.    N.Y. Gen. Bus. Law § 349(a) provides that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

106.    The deceptive acts or practices and the furnishing of Hotmart products took place in this State because Hotmart operates in this State and implemented its deceptive cancellation practices in this state. Therefore, the underlying transactions occurred in New York.

107.    Defendant's marketing and billing practices are consumer-oriented in that they are directed at members of the consuming public.

108.    By engineering and implementing unfair, deceptive, false, and/or misleading billing and

advertising practices, Defendant engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349.

109.    Defendant has violated N.Y. Gen. Bus. Law § 349 by, *inter alia*:

a.    Engaging in a marketing and billing program that is likely to mislead a reasonable consumer acting reasonably under the circumstances;

b.    Failing to disclose clearly and conspicuously that purchases will result in monthly or weekly charges that will automatically renew;

c.    Failing to allow consumers to cancel their Hotmart subscriptions;

d.    Failing to honor consumers' Hotmart subscription cancellations; and

e.    Continuing to post unauthorized charges to consumers' financial accounts after the cancellation of their Hotmart subscriptions.

110.    The aforementioned acts are unfair, unconscionable and deceptive and are contrary to the public policy of New York, which aims to protect consumers.

111.    Furthermore, N.Y. Gen. Bus. Law § 527-a(1) (a) provides that "It shall be unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to . . . fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services."

112.    N.Y. Gen. Bus. Law § 527-a(3) provides "a consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service exclusively online, which may include a termination email formatted and provided by the business that a consumer can send to the business without additional information.

113.    Defendant violated N.Y. Gen. Bus. Law § 527-a by:

(i)    failing to provide clear and conspicuous disclosures of the automatic renewal terms and cancellation terms at checkout;

(ii)    charging Plaintiff and Class Members for automatic renewal subscriptions without first obtaining the customers' affirmative consent;

(iii)    failing to provide an acknowledgement to consumers that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer;

(iv)    failing to allow Plaintiff and Class Members to cancel their subscriptions;

(v)    failing to honor Plaintiff's and Class Members' subscription cancellations; and

(vi)    continuing to post unauthorized charges to Plaintiff's and Class Members' financial accounts after the cancellation of their subscriptions.

114.    N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

115.    Plaintiff and the Classes have been injured by Hotmart's violations of N.Y. Gen. Bus. Law § 349.

116.    Hotmart's unlawful, misleading and deceptive conduct occurred, and continues to occur, in the course of Hotmart's business.

117.    As an actual and proximate result of Defendant's misconduct, Plaintiff and the Classes were injured and suffered damages.

118.    Hotmart is liable to Plaintiff and the Classes for damages in amounts to be proven at trial.

119.    Plaintiff and Class Members further seek equitable relief against Defendant. Pursuant to N.Y. Gen Bus. Law § 349, this Court has the power to award such relief, including but not limited to, an

order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to refund to Plaintiff and Class Members all monthly fees wrongfully assessed and/or collected on it auto-renewal subscription plan.

**SECOND CLAIM FOR RELIEF**
**Violation of the Electronic Funds Transfer Act**
**15 U.S.C. § 1693, *et seq.***
**(On Behalf of Plaintiff and the Classes)**

120.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

121.    Plaintiff seeks to recover for Defendant's violations of the Electronic Funds Transfer Act on behalf of themselves and the nationwide Classes.

122.    The EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system.[18] The "primary objective" of the EFTA "is the provision of individual consumer rights."[19]

123.    Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter."[20]

124.    Defendant's transfers of money from the financial accounts of Plaintiff and Class Members, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205, *et seq.* An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an

---

[18] 15 U.S.C. §§ 1693, *et seq.*

[19] *Id.* § 1693(b).

[20] *Id.* § 1693(l).

account."[21] The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal."[22]

125.    The EFTA defines the term "preauthorized electronic transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals."[23] The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer."[24]

126.    Section 1693e(a) of the EFTA prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." Similarly, Regulation E provides: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."[25]

127.    Plaintiff and Class Members each maintained an "account" as that term is defined by 15 U.S.C. § 1693(a)(2) and are "consumers" within the meaning of 15 U.S.C. § 1693(a)(5).

128.    Defendant uniformly and routinely initiated preauthorized electronic fund transfers and took money from the bank accounts of Plaintiff and Class Members without obtaining their written authorization for the transfers, as required by the EFTA and Regulation E. Specifically, Defendant took money from Plaintiff's and Class Members' bank accounts without written authorization when Defendant

---

[21] *Id.* § 1693(a)(7).

[22] 12 C.F.R. § 205.3(b)(v).

[23] 15 U.S.C. § 1693(a)(9).

[24] 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

[25] *Id.* § 205.10(b).

charged Plaintiff's and Class Members' accounts subscription fees. Further, Defendant violated the EFTA and Regulation E by taking money from Plaintiff's and Class Members' accounts after Plaintiff and Class Members had expressly cancelled their subscriptions and revoked any authorization for such transfers.

129.    The Official Staff Interpretation of Regulation E explains, "when a third-party payee," such as Defendant, "fails to obtain the authorization in writing or fails to give a copy to the consumer . . . it is the third-party payee that is in violation of the regulation."[26]

130.    As a direct and proximate result of Defendant's violations of the EFTA and Regulation E, Plaintiff and Class Members have suffered damages in the amount of the unauthorized debits taken by Defendant.[27] As a further direct and proximate result of Defendant's violations of the EFTA and Regulation E, Plaintiff and Class Members are entitled to recover statutory damages in the amount of "the lesser of $500,000 or 1 per centum of the net worth of the defendant."[28]

131.    Pursuant to 15 U.S.C. § 1693(m), Plaintiff and Class Members are also entitled to recover costs of suit and attorneys' fees from Defendant.

### THIRD CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of Plaintiff and the Classes)

132.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

133.    Plaintiff, individually and on behalf of the Classes, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiff's statutory claims. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees. Also, if claims are deemed not to be covered by the contract—for example, if Defendant has violated state and federal law, but in such a way that it does not violate the contract, then unjust enrichment will require

---

[26] 12 C.F.R. Part 205, Supp. I, § 205.10(b), cmt. 2.

[27] 15 U.S.C. § 1693(m).

[28] *Id.* § 1693(m)(a)(2)(B).

disgorgement of all improperly assessed subscription fees.

134.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly assessed subscription fees upon Plaintiff and the members of the Classes that cancelled their subscriptions that are unfair, unconscionable, and oppressive.

135.    Defendant has unjustly retained a benefit in the form of some or all of the improper subscription fees to the detriment of Plaintiff and the members of the Classes.

136.    Defendant has retained this benefit through its illegal automatic renewal and billing schemes, and such retention violates fundamental principles of justice, equity, and good conscience.

137.    Defendant should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiff and the members of the Classes and should be required to make restitution to Plaintiff and the members of the Classes.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Washington Consumer Protection Act**
**Wash. Rev. Code §§ 19.886.020, *et seq.***
**(On Behalf of Plaintiff and the Washington Subclass)**

138.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

139.    Plaintiff brings this claim individually and on behalf of the members of the Washington Subclass against Defendant.

140.    The Defendant is a "person," as defined by Wash. Rev. Code § 19.86.010(1).

141.    Defendant advertised, offered, or sold products or services in Washington to Washington consumers and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code § 19.86.010(2).

142.    Defendant has violated the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.020.

143.    Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation Wash. Rev. Code § 19.86.020, by, *inter alia*, (i) failing to clearly disclose to

consumers, prior to the completion of a purchase, that Hotmart products will automatically renew for a monthly, recurring fee; (ii) enrolling consumers in Defendant's automatically renewing subscription without the consent or authorization of consumers; (iii) failing to allow Plaintiff and Class Members to cancel their Hotmart subscriptions; (iv) failing to honor Plaintiff's and Class Members' subscription cancellations; and (v) continuing to post unauthorized charges to Plaintiff's and Class Members' financial accounts after the cancellation of their subscriptions

144.    Such acts or practices cause injuries to consumers and are unfair and deceptive because consumers incur charges that are not commensurate with the consumers' reasonable expectations and end up paying for services they never authorized.

145.    Consumers cannot avoid any of these injuries caused by Defendant's deceptive advertising, representations, and practices regarding Hotmart's subscription products. Accordingly, the injuries Defendant caused outweigh any possible benefit, if any exists, from Defendant's marketing and enrollment process for the subscription products.

146.    Defendant knowingly and intentionally employed an unfair and deceptive policy and practice of failing properly disclose the automatic renewal terms and cancellation terms, charging customer accounts without the customer's affirmative consent, and failing to honor consumers' cancellation requests, thereby misrepresenting and failing to disclose its true autorenewal and cancellation policy and practice.

147.    Defendant's enrollment process and cancellation practices are false, misleading, and unreasonable, and constitutes unfair and deceptive conduct. Defendant knew or should have known of its unfair and deceptive conduct.

148.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

149.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical,

oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Washington Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition, if any exist.

150.    Plaintiff and the Washington Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the Washington Subclass paid unwarranted and unauthorized subscription fees, or otherwise bargained for a product they did not receive. Plaintiff and the Washington Subclass would not have purchased merchandise from Defendant in the first place, or would have taken other steps to avoid becoming enrolled in and/or charged for Defendant's subscription products, such that Plaintiff and the Washington Subclass would not have paid any money to Defendant for these products, if they had been notified of the full terms and conditions of the products and Defendant's unauthorized enrollment practices.

151.    As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiff and Washington Subclass Members have suffered and will continue to suffer injury and damages.

152.    Plaintiff and the Washington Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

153.    Defendant also engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated MCPA by, *inter alia*, abusing its discretion to interpret undefined terms in a manner harmful to consumers and beneficial to Defendant.

154.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Washington Subclass have suffered actual damages.

## **PRAYER FOR RELIEF**

For the foregoing reasons, Plaintiff, individually and on behalf of the Classes, prays for the

following relief:

(a)    Certification for this matter to proceed as a class action on behalf of the Classes pursuant to Rule 23;

(b)    Appointment of the Plaintiff as representative of the Classes;

(c)    Appointment of counsel for Plaintiff as Lead Counsel for the Class;

(d)    A finding that Defendant's practices are in violation of state consumer protection statutes;

(e)    Restitution of all amounts improperly paid to Hotmart by Plaintiff and members of the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

(f)    Actual damages in an amount according to proof;

(g)    Statutory damages as allowed by law;

(h)    An award of pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

(i)    An award of costs and attorneys' fees under the common fund doctrine and all other applicable law; and

(j)    Declaratory and injunctive relief on behalf of the general public.

(k)    Plaintiff also requests such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: August 13, 2024

*/s/ Daniel Martin*
Daniel Martin (NY Bar No. 4882635)
Jeffrey D. Kaliel (to be admitted *pro hac vice*)
Sophia G. Gold (to be admitted *pro hac vice*)
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
dmartin@kalielgold.com
jkaliel@kalielpllc.com

sgold@kalielgold.com

**JENNINGS PLLC**
Christopher D. Jennings (to be admitted *pro hac vice*)
Tyler B. Ewigleben (to be admitted *pro hac vice*)
Winston S. Hudson (to be admitted *pro hac vice*)
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (601) 270-0197
chris@jenningspllc.com
tyler@jenningspllc.com
winston@jenningspllc.com

*Attorneys for Plaintiff and the Proposed Classes*