## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY HOAR, THOMAS SIMMONS, and TIMOTHY ARIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LAUNCH PAD PAYMENT SERVICES CORPORATION and HOTMART BV<br><br>Defendant. | Civil Action No. 24-cv-06195-CM<br><br><br>**JURY TRIAL DEMAND** |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs Timothy Hoar, Thomas Simmons, and Timothy Arias, individually and on behalf of all others similarly situated, bring this amended class action complaint against Launch Pad Payment Services Corporation and Hotmart BV (collectively "Defendant" or "Hotmart")[1], and allege the following:

## <u>INTRODUCTION</u>

1.    Plaintiffs bring this action on behalf of themselves, the general public, and classes of similarly situated consumers against Hotmart arising from Hotmart's deceptive and fraudulent billing practices.

2.    Specifically, Hotmart lures consumers into providing their debit card information based on the promise of products offered on its platform. Hotmart advertises these products as being available for purchase for a one-time payment. But that is false.

3.    Instead, Hotmart exploits consumers by sneaking on additional charges and subscriptions for other goods and services not advertised or disclosed to customers at checkout.

---

[1] Defendants are part of the same family of companies and thus referred to as a single defendant.

1

4.    Here's how it works. Hotmart products such as a NeoCash Card or Google Captcha, that promise potential riches or lucrative side-hustles are advertised to customers on Facebook and on Hotmart's website. When consumers choose to purchase one of these products for a one-time payment, they are secretly and surreptitiously opted into additional services and subscriptions.

5.    When consumers purchase one of these products, they are also subjected to multiple unauthorized charges, usually within minutes of inputting their debit card information. Consumers are subsequently charged for the product they purchased multiple times over the ensuing weeks, with no clear way to cancel or stop the charges, despite only authorizing an initial single payment.

6.    In addition, Hotmart begins charging customers for other services and/or products that were never signed up for by customers or disclosed to customers at the time of checkout, usually charging customers multiple times each month for these additional products and/or services.

7.    In certain circumstances, Hotmart also deceptively enrolls customers into automatically renewing subscriptions in violation of state automatic renewal protection laws. Customers who purchase products and services using the Hotmart platform are not aware that they will be enrolled in automatically renewing subscriptions at the time of purchase. Hotmart violates automatic renewal laws by enrolling consumers in automatic-renewal or continuous service subscriptions without providing the "clear and conspicuous" disclosures mandated by law. Hotmart also does not clearly and conspicuously disclose to customers how to cancel these subscriptions and fails to cancel subscriptions when requested by their customers.

8.    For example, Plaintiff Hoar signed up for the NeoCash Card throughout Hotmart, authorizing a one-time charge of $9.95 and an additional charge of $19.95 to upgrade his account for the service. Plaintiff Hoar relied on Hotmart's express promise that his debit card would only be charged $9.95 and $19.95 for the product. Almost immediately after purchasing the product,

Hotmart began automatically charging Plaintiff's debit card additional unauthorized payments for other services that Plaintiff Hoar did not purchase or authorize. Over the next month, Hotmart charged Plaintiff Hoar's debit card at least 10 more times in varying amounts ranging from $6.30 to $89.98, for additional services that Plaintiff did not purchase or want. This kind of deceptive billing practice constitutes a classic bait-and-switch scheme.

9.      The repeated charges continued on Plaintiff Hoar's account for the next six month, under varying product names that were constantly changing. Eventually, Plaintiff Hoar was automatically enrolled in weekly and monthly recurring subscriptions that he did not authorize or want.

10.      Plaintiffs Simmons and Arias similarly received unexpected charges after they purchased a Google Captcha product through Hotmart. Plaintiff Simmons saw the product advertised as being for sale for $12. After Plaintiff Simmons entered his payment information into Hotmart's webpage, he was subsequently charged $12, then two additional payments of $39.81 and $39.05 by Hotmart, which he did not authorize. Plaintiff Arias similarly saw the Google Captcha product advertised as being for sale for $17.00 on Hotmart's website. After entering his payment information, Plaintiff Arias was initially charged $17, then assessed multiple unauthorized charges for the Google Captcha product and additional Hotmart products.

11.      Upon a consumer's discovery of the hidden subscription enrollment and additional random charges, he or she must then navigate Hotmart's exceedingly difficult and unnecessarily confusing process for cancelling the subscription.

12.      However, for purchases that were not subscriptions, including Plaintiffs' original purchases of NeoCash Card and Google Captchas, there is no way to cancel the ensuing charges because Plaintiffs were not ever enrolled in a subscription. Instead, once Hotmart gains control of a customer's debit card information, they levy as many charges as they can on the customer's card

as fast as they can, in order to enrich themselves.

13.     In addition to the above allegations, Hotmart regularly fails to cancel subscriptions even when requested by consumers and continues to charge consumers unwanted weekly and monthly fees even after they attempt to cancel their subscription. In so doing, Hotmart systematically violates automatic renewal laws.

14.     On behalf of themselves and the proposed classes, Plaintiffs seek damages, restitution, statutory damages, attorneys' fees, punitive damages, and injunctive relief for violation of (i) New York's Gen. Bus. Law § 349; (ii) New York's Gen. Bus. Law § 350; (iii) the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq*.; (iv) unjust enrichment; (v) conversion; (vi) Common law fraud; (vii) the Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.020, *et seq*.; (viii) the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (ix) the California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; and (x) the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.

## PARTIES

15.     Plaintiff Timothy Hoar is a citizen and resident of Winlock, Washington.

16.     Plaintiff Thomas Simmons is a citizen and resident of Brooklyn, New York.

17.     Plaintiff Timothy Arias is a citizen and resident of Sacramento, California.

18.     Defendant Launch Pad Payment Services Corporation is a Delaware corporation with its principal place of business and headquarters in New York City, New York. Hotmart's platform sells products and services throughout the United States.

19.     Defendant Hotmart BV is a Dutch company with its registered office at Frederiksplein 1, 1017, XK Amsterdam, Amsterdam, Netherlands, KVK CCI. Defendant Hotmart BV regularly conducts business in the United States, including in New York.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction over this action because (1) the proposed classes are comprised of at least 100 members, (2) at least one member of the proposed class is a citizen of a state other than New York, and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) and (6).

21.     Venue is proper in the United States District Court for the Southern District of New York because Hotmart is subject to personal jurisdiction in the Southern District, because Hotmart regularly conducts business in the Southern District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Southern District. 28 U.S.C. § 1391. Additionally, Hotmart's own General Terms of Use require venue of any lawsuit to be the Southern District of New York or New York state courts.[2]

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

## I.     OVERVIEW OF HOTMART PLATFORM

22.     Hotmart describes itself as a global technology company and leader in the "Creator Economy."[3]

23.     Hotmart provides a platform for users to list and sell their digital products and services, including e-books, online courses, video lessons, and more. As of 2023, Hotmart had more than 35 million users, and more than 580,000 digital products registered on its platform.[4]

24.     Consumers can visit Hotmart's website (https://hotmart.com/en) to browse for courses or digital products, or they can respond to one of the many advertisements on social media

---

[2] *See* https://perma.cc/RK7N-AVXP.

[3] "For the fourth consecutive year, Hotmart is among the world's fastest-growing companies in digital learning," HOTMART (Jan. 16, 2023), https://press.hotmart.com/for-the-fourth-consecutive-year-hotmart-is-among-the-world-s-fastest-growing-companies-in-digital-learning.

[4] *Id.*

websites that directs users to Hotmart products.

25.    Hotmart calls people who make and sell digital content using their platform "Creators."[5] Creators utilize Hotmart's platform, tools, and payment system to set up a page for their products and begin selling to the public. These products can be sold on Hotmart's marketplace, or Creators can use their own website where Hotmart handles the checkout page and billing. The checkout pages and website domains clearly advertise these as Hotmart products, with Hotmart stating that it processes the orders.

26.    Hotmart is free for Creators to use, but Hotmart takes a 9.9% fee from any sale made using their platform.[6]

## A. PLAINTIFFS WERE DECEIVED BY HOTMART AND CHARGED FOR UNAUTHORIZED PAYMENTS

i.    *Plaintiff Hoar*

27.    On or around August 20, 2023, Plaintiff Hoar viewed an advertisement on Facebook for the NeoCash Card.

28.    Plaintiff Hoar clicked on the ad and was taken to a website operated by Hotmart, where he was instructed to input his payment information in order to pay $9.95 to purchase the NeoCash Card.

29.    Upon information and belief, the NeoCash Card is actually a fraudulent scheme, in which parties turn over their payment information for a product that they never receive, only to have their debit or credit cards repeatedly charged by Hotmart without warning and without their authorization.

30.    Hotmart's actions and the scam that proliferated on Facebook has been documented online. In fact, YouTuber Jordan Liles, who specializes in making videos about scams and frauds,

---

[5] How Does Hotmart Work? Everything You Need to Know, Hotmart (Oct. 30, 2022), https://hotmart.com/en/blog/how-hotmart-works.

[6] *Id.*

made a video on April 17, 2024 about the NeoCash Card called "NeoCash Card $4,760 Scam on InternetHiddenSecrets.com and Hotmart.com, Exposed."[7]

31.    The video shows that once a consumer clicks on one of these ads on Facebook, they are taken to a webpage run by Hotmart, and shown Hotmart's standard checkout, which states that a user can purchase the NeoCash Card for $9.95:



32.    As shown in a screenshot from the video above, the checkout page is operated by Hotmart, located at "pay.hotmart.com." Consumers, like Plaintiff, are instructed to enter their debit or credit card information into the website in order to make a one-time payment of $9.95 in order to purchase the card.

33.    Consumers, like Plaintiff, are also offered a life upgrade for an additional $19.95 at

---

[7] Jordan Liles, "NeoCash Card $4,760 Scam on InternetHiddenSecrets.com and Hotmart.com, Exposed," YouTube (April 17, 2024), https://www.youtube.com/watch?v=_sZrdy91gQE&t=21s.

checkout:



34.     Nothing in the checkout process warns a consumer that his or her payment information will be used for additional services they were not warned about and did not purchase:

[Image on Next Page]



35.     The landing pages of these fraudulent products, like the one for NeoCash Card shown above, are regularly deleted or changed after a few weeks or months to avoid detection. As a result, the NeoCash Card landing page is no longer accessible. Upon information and belief, in addition to the NeoCash Card product purchased by Plaintiff Hoar, there are hundreds or even thousands of these types of deceptive products on Hotmart's platform, and the landing pages that consumers are brought to after viewing an ad are regularly changed or deleted.

36.     On or around August 20, 2023, Plaintiff purchased the NeoCash Card on Hotmart for a single payment of $9.95 and he also purchased the Life Upgrade for $19.95 for his personal, family, or household use. Life Upgrade was a product included with the NeoCash Card for an additional payment that purported to extend the use of the NeoCash Card. Plaintiff Hoar entered his debit card information into Hotmart's checkout page and only authorized two payments of $9.95 and $19.95 respectively.

37.     Shortly after Plaintiff's purchase, his debit card began being charged multiple times

by Hotmart for additional services that Plaintiff did not purchase or authorize.

38.    On the same day, August 20, 2023, Plaintiff Hoar received two unauthorized charges of $52.15 each from Hotmart for a service called "UPSL" that Plaintiff Hoar did not purchase or authorize. Both charges were eventually declined from his debit card, likely due to insufficient funds in Plaintiff's bank account at that time.

39.    On September 7, 2023, Plaintiff Hoar was suddenly charged $6.30 for a service called "System Approved" and $15.76 for a serviced called "Lifetime System Upgrade." Plaintiff Hoar did not authorize either of these charges on his debit card.

40.    Hotmart also attempted to charge Plaintiff $89.98 three times on September 7, 2023 for a service called "Secret Robot." The Secret Robot charges were declined likely due to insufficient funds in Plaintiff's account, but the charges for System Approved and Lifetime System Upgrade succeeded in stealing funds from Plaintiff.

41.    On September 9, 2023, Hotmart repeated its actions, charging Plaintiff Hoar $6.30 and $15.76 for "System Approved" and "Lifetime System Update." These are products that were advertised as single payment items, yet Plaintiff was receiving nearly daily repeat charges for these products. Again, Hotmart attempted to charge Plaintiff $89.98 multiple times for the product "Secret Robot."

42.    The charges of $6.30 and $15.76 continued to be charged to Plaintiff Hoar on September 12, 2023, September 16, 2023, October 31, 2023, December 23, 2023, and January 28, 2024. Throughout that time, the name of the product that Plaintiff Hoar was being charged for would change from "System Approved" and "Lifetime System Update" to names like "The transformational method", "Weekly Updates", "automatic update", "ETF Account", and "Unlimited Updates."

43.    During the months following the August 2023 purchase, Plaintiff Hoar was also

charged in other varying amounts, such as being charged $8.30 on October 1, 2023, for a product called "Joy Diamond" that Plaintiff did not purchase or authorize Hotmart to charge him for. Plaintiff Hoar was also charged $62.15 on October 31, 2023 for a product called "Method transformatrice 2.0", and he was charged $47 on April 9, 2024 for a product called "Face Evaluator."

44.     In addition to the funds that Plaintiff Hoar lost because of the above charges, Hotmart also repeatedly attempted to charge Plaintiff $89.98 for various products (or the same product with a different name), including "Secret Robot", "New Robot", "Joy Diamond", "Automatic Update", and "ProfitPulse mastery: Accelerated Wealth Coaching." Nearly every time Plaintiff's debit card was charged $89.98—12 total—it was declined due to insufficient funds, sometimes causing Plaintiff numerous insufficient fund fees on his bank account. Hotmart succeeded at withdrawing $89.98 one time on February 10, 2024. Hotmart had a standard practice of charging Plaintiff repeatedly, nearly every week—usually multiple times a week—attempting to withdraw as much as they could from Plaintiff's bank account at any one time, until there was nothing left.

45.     Plaintiff Hoar was also secretly signed up for two additional subscriptions by Hotmart, which charged him $17.62 each month for a service called "Profit Multiplicator" beginning on October 1, 2023, and also charged him $20.00 weekly for a service called "MORE EARNINGS" beginning on April 9, 2024.

46.     In total, Plaintiff Hoar paid at least $460 in fraudulent charges to Hotmart from August 2023 to April 2024. Hotmart attempted to charge Plaintiff's debit card so many times that if they had been able to successfully withdraw all the money that they billed Plaintiff Hoar for, it would have equaled at least $1,700.00 in only seven (7) months' time.

47.     Plaintiff Hoar has been and continues to be injured by Hotmart's deceptive billing

schemes.

48.    This is not a one-time event at Hotmart, solely related to the NeoCash Card. Hotmart is filled with scams that allow Hotmart to gain access of users' payment information and repeatedly charge consumers in violation of their own terms and state and federal laws, without allowing those customers a way to stop the charges.

49.    Plaintiff Hoar was never able to gain access to the NeoCash Card, ETF Bot, or any other product from Hotmart. Instead, Plaintiff was routinely charged by Hotmart for products he could not use and did not want, without his authorization.

50.    Hotmart's bait-and-switch practice lured Plaintiff Hoar and other members of the classes into purchasing products and/or subscriptions on Hotmart without informing Plaintiff Hoar and class members that they would actually be charged multiple times for the same product, be charged for additional products not disclosed at purchase, be enrolled in an automatically renewing membership, and not be allowed to cancel. In return, once armed with customers' card information, Hotmart secretly charged Plaintiff's and class members' cards for various additional fees and products without providing any notice and without obtaining their affirmative consent.

**B. Google Captcha and Hotmart Scam**

51.    Upon information and belief, the Google Captcha product is another fraudulent scheme that proliferated on Facebook and other social media platforms, in which parties turnover their payment information for a product or service that they never receive, only to have their debit or credit cards repeatedly charged by Hotmart without warning and without their authorization.

52.    The scheme, which has been the driver of many online consumer complaints over the last year, is not much different than the one that ensnared Plaintiff Hoar. It similarly offers the promise of a lucrative income if only a customer inputs their payment information into Hotmart's system. Both Plaintiffs Simmons and Arias were deceived and harmed by this scheme.

53.     The Google Captcha scam works as follows. A consumer is shown an advertisement or link on Facebook or TikTok or some other social media platform or website. Once a consumer clicks on the link they are taken to the following page:



54.     As part of the scam, consumers, like Plaintiffs, are shown the following page and told to watch the video linked on the page in order to redeem money that is waiting for them from reviewing Google Captchas. Once consumers watch the video, they can click on a green button to purchase the product:



55.    Once a consumer clicks on the green button titled "I Want to Pay The Fee", they are redirected to the Hotmart checkout page shown below:



56.    On Hotmart's website, users are told to enter their debit or credit card information in order to purchase the product Google Captcha product. In this instance, the website requests that customers only pay $17.00. Upon information and belief, similar Hotmart pages and products show different prices, such as $12.00.

57.    As shown on the checkout page, consumers are further pressured into entering their payment information and making a purchase with a countdown clock at the top of the page that

falsely advertises that the deal is only available for the remaining ten minutes. This is a false timer that merely is intended to pressure customers into making a purchase and entering their payment information. Once armed with their payment information, Hotmart assesses repeated charges for more than the amount advertised on the checkout page.

  *ii.*  *Plaintiff Simmons*

  58.  On or around December 18, 2024, Plaintiff Simmons viewed an advertisement on Facebook for the Google Captcha product.

  59.  Plaintiff Simmons clicked on the ad and was taken to a website where he was shown a video claiming he could earn money by reviewing Google Captchas. After watching that video, Plaintiff Simmons clicked on a link that took him to a website operated by Hotmart, where he was instructed to input his payment information in order to pay $12.00 to purchase the Google Captcha product.

  60.  Unfortunately, the Google Captcha product is actually a fraudulent scheme advertised and facilitated by Hotmart, in which parties turnover their payment information for a product or service that they never receive, only to have their debit or credit cards repeatedly charged by Hotmart without warning and without their authorization.

  61.  On or around December 18, 2024, Plaintiff Simmons purchased the Google Captcha product from Hotmart using his debit card for personal, family, or household use, but he was never actually able to use the product or earn any money. Instead, his debit card information was then used by Hotmart to assess a charge for $12 on December 18, 2024, $39.81 on December 19, 2024, and $39.05 on December 26, 2024.

  62.  The Google Captcha review was a scam that proliferated on Facebook and Hotmart. The exact website and checkout page that Plaintiff Simmons viewed has likely been deleted by its creators and Hotmart. However, it was likely similar to the pages shown above in ¶¶ 53-57 of this

Amended Complaint, with the Hotmart checkout being nearly exactly same except for the advertised price amount being $12.00 instead of $17.00.

63.    Hotmart's scam continues to appear around the internet and on different social media websites, such as Facebook and TikTok, and many consumers have fallen prey to it. For example, the following complaints are a few examples of consumers who fell for the same or similar scam being:



### Taking too much money

Dec 22, 2024    ★☆☆☆☆    **1.0**



If I could give zero stars, I would. They had an ad out on TikTok where you can sign up and earn money from google captchas.

After signing up, it turns out I needed to pay $12. I paid the $12, but then they also withdrew almost $40 fout times in a row. I did a refund request for all the funds from "Hotmart", who owns the advert and withdrew the money from my account. As it currently stands, I am still waiting for my refunds.

I have not received it yet. They withdraw money without you knowing what its for.

**Loss:** $172

**Cons:** False andvertizing and taking more money than what they originally should and taking money that has not been approved

**Preferred solution:** Full refund

**User's recommendation:** Treat this as a SCAM. Dont get involved.

**Hotmart**     Reviews    Q&A    Contacts

 **Dionivie C**
Verified Reviewer

⋮

## I need to get full refund for all the charge that you charge me like almost $200

Dec 08, 2024    ⭐️☆☆☆☆    **1.0**



They charge me almost like $200 when I tried to check in the Facebook I thought that its work but when I try to put my credit card, they keep charging me like a couple times and this is not good. They said only $12. They say anything that theyre gonna charge me five times for $40.

**Loss:** $211

**Pros:** Advertise the work that is very good

**Cons:** Refund probleme

**Preferred solution:** Full refund

**User's recommendation:** No, this is not good to recommend to the customer. They said $12 and then they keep charging me a lot.

[ **Comment** ]    👍 **Helpful**

**1 comment**

 **Addilee Exm**    ⋮
Dec 09, 2024

Yeah I got screwed on Facebook too regarding a captcha account through Google they were looking to hire and I sent them money and it went to this hotmart what a burn

18

 **Tony C Hmi**
Verified Reviewer

⋮

### Complete refund of $196.90

Dec 28, 2024    **1.0**

**Updated by user Dec 29, 2024**

Since I never got a chance to deal with them I just had my bank take care of it, on the spot full refund, they could take your money right away but yet can't give it back anytime soon, nah, you just take a different approach and make it happen.

**Original review Dec 28, 2024**

I got screwed out of almost $200 and never got a single dime from the Google capcha *** I want all the money back

**Loss:** $197

**Cons:** Theives

**Preferred solution:**  Full refund

64.     Although the specific Hotmart checkout page Plaintiff Simmons saw might no longer exist, similar Google Captcha scams run by Hotmart still exist, as described above.

65.     Plaintiff Simmons has been and continues to be injured by Hotmart's deceptive billing schemes.

66.     Hotmart's platform is filled with scams that allow Hotmart to gain access of users' payment information and repeatedly charge consumers in violation of their own terms and state and federal laws, without allowing those customers a way to stop the charges.

67.     Plaintiff Simmons was never able to gain access to the Google Captcha product or the promised funds. Instead, Plaintiff Simmons was routinely charged by Hotmart for amounts greater than the purchase price without his authorization.

68.     Hotmart's bait-and-switch practice lured Plaintiff Simmons and other members of the classes into purchasing products on Hotmart without informing Plaintiff Simmons and class

19

members that they would actually be charged multiple times for the same product and be charged in increasing amounts not disclosed at checkout. In return, once armed with customers' card information, Hotmart secretly charged Plaintiff Simmon's and class members' cards for various additional fees without providing any notice and without obtaining their affirmative

     *iii.*    *Plaintiff Arias*

69.    On or around December 5, 2024, Plaintiff Arias viewed an advertisement on Facebook for a way to make money reviewing Google Captchas.

70.    Plaintiff Arias clicked on the ad and was taken to a website where he was shown a video claiming he could earn money by reviewing Google Captchas. After watching that video, Plaintiff Arias clicked on a link that took him to a website operated by Hotmart, where he was instructed to input his payment information in order to pay $17.00 to purchase the Google Captcha product.

71.    As described above, the Google Captcha product is actually a fraudulent scheme, in which parties turnover their payment information for a product or service that they never receive, only to have their debit or credit cards repeatedly charged by Hotmart multiple times without warning and without their authorization.

72.    On or around December 5, 2024, Plaintiff Arias purchased the Google Captcha product from Hotmart using his debit card for personal, family, or household use, but he was never actually able to use the product or earn any money. Instead, his debit card information was then used by Hotmart to assess a charge for $17 initially. Then Hotmart subsequently assessed Plaintiff Arias additional unauthorized charges for $54.02 on December 9, 2024, $27.02 on December 23, 2024, and $15.01 on December 30, 2024.

73.    Immediately after his purchase, Hotmart also began charging Plaintiff Arias for another product called BodySync360. Hotmart assessed unauthorized charges on Plaintiff Arias's

debit card for BodySync360 of $37.03 on December 6, 2024, $15.05 on December 9, 2024, $27.05 on December 27, 2024, $37.03 on December 30, 2024,  $27.05 on January 2, 2025, $37.03 on January 2, 2025, and $15.05 on January 2, 2025.

74.    Upon information and belief, Plaintiff Arias saw the same pages or similar pages as the Hotmart checkout screen shown above in ¶¶ 53-57 of this Amended Complaint.

75.    Plaintiff Arias has been and continues to be injured by Hotmart's deceptive billing schemes.

76.    Hotmart is filled with scams that allow Hotmart to gain access of users' payment information and repeatedly charge consumers in violation of their own terms and state and federal laws, without allowing those customers a way to stop the charges.

77.    Plaintiff Arias was never able to gain access to the Google Captcha product or the promised funds. Instead, Plaintiff Arias was routinely charged by Hotmart for amounts greater than the purchase price without his authorization.

78.    Hotmart's bait-and-switch practice lured Plaintiff Arias and other members of the classes into purchasing products on Hotmart without informing Plaintiff Arias and class members that they would actually be charged multiple times for the same product and be charged in increasing amounts not disclosed at checkout. In return, once armed with customers' card information, Hotmart secretly charged Plaintiff Arias's and class members' cards for various additional fees without providing any notice and without obtaining their affirmative consent.

**C. Hotmart's Checkout Process**

79.    Hotmart has standard checkout processes and pages for products and services sold on its platform. However, these pages do not disclose that once users enter their payment information into Hotmart's website, they will be subject to multiple unauthorized charges for a single product and charged for products they did not even know were included in their purchase.

80.    Most users, like Plaintiffs, are lured onto Hotmart's website through advertisements on Facebook or other social media platforms. Once on Hotmart's website, customers are taken to a checkout page that looks like the following, requesting that they enter their payment information into the page in order to purchase a product:



81.    However, nothing on that checkout page discloses that consumers will be charged

multiple times for the product they are purchasing, that they will be charged additional fees beyond the purchase price, or that they will be charged additional fees for other products that are secretly added on after the purchase.

82.     Further, for products that are actual subscription products, Hotmart does not clearly and conspicuously disclose that those products will automatically renew each month, obtain users affirmative consent to automatically charge their payment method each month, or disclose that users need to cancel to avoid being automatically charged or how they can cancel a Hotmart subscription.

[Image on Next Page]



🇺🇸 Change country ▾

**Xzode Lab**
Author: Xzode
**$2.00 / month**
(+ applicable taxes. Click here for more information)

Your full name

Enter your full name

Your email address

Enter the email to receive your purchase

Confirm your email

Enter your email again

Phone number

🇺🇸 +1 ▾        (201) 555-0123

Address

Street and house number

Address line 2 (optional)

Apartment, suite, etc.

E.g.: Apartment B2, second floor.

Zip Code                City                    State

Enter your ZIP code here    Where do you live?    Select your state ▾

🏷 Do you have a discount coupon?                    ⌄

💳 Card    🔥 Hotmart Account    𝙿 PayPal    ⊕ Show more

Card number

Enter numbers only

Name of account holder

Enter name printed on the card

Month        Year        CVV        ⓘ

MM ▾        YY ▾        CVV

Order details

Xzode Lab                                    $2.00 / month

**Buy now**

Need any help?

Contact the creator about the product
Learn how to fill out checkout information
Contact Hotmart about payment issues   (CKT:ID-T88747989H87z5kat01-1718826259184-6919)  🗍
Please copy and paste the code above when submitting a request

By clicking 'Buy Now' I declare that I (i) understand that Hotmart is processing this order on behalf of Xzode and has no responsibility for the content and/or control over it; (ii) agree to Hotmart's Terms of Use , Privacy Policy and other company policies and (iii) am of legal age or authorized and accompanied by a legal guardian. Learn more about your purchase here .

Hotmart © 2024 - All rights reserved
2024-06-19T19:45:29.757Z   REF.

25

83.     These above examples are standard product and checkout pages for Hotmart products, and they are identical or substantially similar to the checkout pages used by Hotmart to collect Plaintiffs' payment information.

84.     Hotmart's website and checkout process is designed to confuse and deceive consumers into handing over their payment information to Hotmart so that Hotmart may repeatedly bill their account for unauthorized purchases and subscriptions.

85.     While users may post their own products or courses on Hotmart's platform, all checkout services, payment processing, and recurring billing and cancellation is performed by Hotmart.

**D.  Hotmart Makes it Nearly Impossible to Cancel or Stop Charges and Does Not Cancel Subscriptions or Stop Charges Even When Consumers Request that They Do So**

86.     In or around December 2023, Plaintiff Hoar requested that Hotmart stop charging his debit card for these services.

87.     When Hotmart did not respond, on February 18, 2024, Plaintiff Hoar sent an email to the product creator demanding that they stop charging his card.

88.     On March 3, 2024, and March 5, 2024, Plaintiff Hoar sent another email to the product creator demanding that the charges stop. However, Plaintiff continued to be charged hundreds of dollars for services he did not want, use, or authorize during this time.

89.     While Plaintiff Hoar did lawfully and clearly request that these charges and any subscriptions stop, he did not have to do so. The products that Plaintiff Hoar purchased were not subscription products. As described above, the NeoCash Card, and many of the other products that were secretly added to Plaintiff's purchase and were advertised as single-payment purchases. Plaintiff Hoar only made one payment to purchase a product, but Hotmart secretly added on additional products and subscriptions for which they automatically charged Plaintiff.

90.    Hotmart violated various state consumer protection statutes by charging Plaintiffs multiple times for products that were not subscriptions, and by charging Plaintiffs for products they did not purchase or authorize.

## II.    Consumers Regularly Complain About Hotmart's Deceptive Billing Practices

91.    Websites such as Reddit, Trustpilot, and PissedConsumer are filled with thousands of complaints from consumers who were unknowingly enrolled in Hotmart subscriptions, charged repeatedly for the same product, and charged for products they did not even purchase. Like Plaintiffs, many have complained about products added on to their purchase, or being randomly charged for various amounts at varying intervals by Hotmart.

92.    Just like Plaintiffs, one user on Reddit described Hotmart's various schemes and the impossible challenge of stopping the charges:



93.    The following online consumer complaints are a sample of the types of problems users of Hotmart's services and platform complain about on Trustpilot and PissedConsumer:



**John a. Ohmer jr**
1 review    ⊙ US

★☆☆☆☆                                                    2 days ago

**Pro SCAMMERS**

Pro SCAMMERS
THEY GET YOUR CARD INFO AND BURN UP YOUR CARD WITH FRAUDULENT CHARGES WITHIN MINUTES I'm going to dispute the charges ASAP

**Date of experience:** December 03, 2024



**PW** **Paul Wiser**
1 review    ⊙ US

★☆☆☆☆                                                    Mar 20, 2024

**Hotmart is a professional money…**

Hotmart is a professional money grabbing establishment that sells products and services that have little or no value. Then when you give them your credit card information they charge you a $27.00 monthly membership fee that gives you nothing in return. I am disputing this pending charge before it even posts. Scammers!!!!

**Date of experience:** February 19, 2024

👍 Useful **3**    ⤳ Share                                    ⚑

28

 **Heather Bower**
1 review   📍 US

⭐☆☆☆☆                                        5 days ago

### Scam Site

It continues to look as though the payment is not going through. It looks like it is loading up a new page but then the payment page pops up again as if it didn't go through so you checked it is correct and try resubmitting... IT IS ACTUALLY CHARGING YOU EACH TIME YOU THINK YOU ARE ATTEMPTING AND IT IS NOT SEEMING TO GO THROUGH.

INTENTIONAL SCAM.

**BR** **Brenda**
5 reviews   📍 US

⭐☆☆☆☆                                        Mar 23, 2024

### Sell phones but never send.

Ad too good to be true but who wouldn't buy a new 2 lens iPhone for $118.00? Total scam. Never sent. Website supports seller not refunding after his designated date. Even if you never received anything.
They also start taking money from your account a week after receiving your payment. Terrible!

**Date of experience:** March 23, 2024

👍 Useful **2**     ⌁ Share                                                      ⚑



**Richard Vaughn**
1 review   📍 US

⭐☆☆☆☆                                                    Apr 30, 2024

### Hotmart delivers invoices onlyu

I ordered 1 video $7.99 and 1 product $19.95
Never received product, just Invoices every week.
Their site is not easily accessed to converse or cancel. I will delete on PayPal.

**Date of experience:** April 30, 2024

👍 Useful **2**     ⌁ Share                                              🚩



**Christopher Lee Johnson**
1 review   📍 US

⭐☆☆☆☆                                                     Apr 5, 2024

### This company is as big a scam!

This company is as big a scam in that product I thought I purchased was something else. The NeoCash Card turned out to be a weight loss book written in Portuguese! I neither read or speak Portuguese!

I ask Hotmart for a refund, and what do I get? A bot that says my purchase made on March 26 2024, had an expiration date of 03/04/2024! Please tell how a period expires weeks before the purchase was made.

If I ever see any product use Hotmart as the checkout I WILL NOT BUY IT.

But, I do thank them for inspiring me to create an advocacy group that stops your kind of predatory transactions possible!

**Date of experience:** March 26, 2024

 **Ella**
1 review    US

                                                    10 hours ago

**Well I accidentally hit the button to…**

Well I accidentally hit the button to order 3 times at 37 dollars I have made many attempts for refund and I
Have yet to get a simple reply. Not only that I have not even gotten to use the app. Seems like total scam to me.

**Date of experience:** November 18, 2024

---

DO  **Dollie C Owp**
Verified Reviewer                                                            ⋮

## I have never used the product and have been trying to cancel for months. The payment is coming out of my checking account ($10.21).

May 13, 2024       **1.0**

Hotmart is the most difficult company to get in touch with. Trying to talk with an individual has been impossible!!!

**Loss:** $41

**Cons:** Not able to speak with a person

**Preferred solution:** Full refund

 **Comment**     **Helpful**

 **Matthew T Wuh**
Verified Reviewer

## Refund

May 07, 2024      **1.0**

After making a initial purchase I was taken to another landing page where I didn't see an option to decline so I ended up being taken to yet another landing page and another and another. When all was said and done I ended up with 4 purchases. And the refund. Well if your expecting it not to happen for a while then your in luck because process time seems to drag out to about a month. I won't even mention the language.

**Cons:**  Refund taking time a lot

**Preferred solution:**  Full refund

**User's recommendation:**  Waist of time and money

   Helpful

 **Lameisha Asj**
⚲ Houston, Texas

## Questions about Bill

May 03, 2024      **1.0**

Explain is a week payment I need to cancel my subscription I didnt understand is every week I have to pay. I do not have the money to pay every week so refund me this week payment and cancel my subscription.

   Helpful

 **Anais Martinz-Espinosa**
4 reviews    PR

 A day ago

### Im writing this review on behalf of my…

Im writing this review on behalf of my aunt...

She saw a video if you sign up to a 9.99 membership she will be getting all items from Shein for free. SCAAAM they make you believe the page is not loading and keep showing you the same information for keep charging you every time you try.
They empty her account and we need report it to the Bank. If you are looking for reviews ruuun from that site!!!!

**Date of experience:** December 01, 2024

 **Tomas Fletcher**
1 review    TH

 Nov 16, 2024

### Hotmart acts like a fraudulent …

Hotmart acts like a fraudulent company.
In September 2024 I purchased (what I thought was a genuine offer )a Apple iPhone but turned out I was signing up for a membership for Hotmart. I emmediately complained and tge eventually refunded and assured me I would deleted from membership and no further monies would be debited from my bank account. In October they took a further 97 dollars I contacted by email 5 times with No response. I blocked them from any further attempts to take money and I am still getting reminders.

**Date of experience:** October 06, 2024

 **Lathasa Newkirk**
5 reviews  ⦿ US



★☆☆☆☆                                            Dec 21, 2024

### Hotmart Scam in a Spanish speaking country

Scam and I was robbed for 5 payments of $39.96 and one payment of $12.09.
Reported to my financial institution. Never heard of the company or even know about
what it does or doesn't do. I'm livid.

**Date of experience:** December 21, 2024

---

 **Dorothy Miller**
2 reviews  ⦿ US



★☆☆☆☆                                            Dec 17, 2024

### TOTAL SCAM!

This company doesn't even deserve 1 star. They advertise you can make $150 a day
and up to $2400 a week, which doesn't add up, by just reviewing ads as to whether
you like them or not. They charge you $10.57 then immediately try to charge $15.90
twice. Thankfully I use Cash App and my card blocked the charges as possible scam.
I'm trying to get a refund but not holding my breath. They also pose as Facebook
hiring for users to review ads but then comes up as Hotmart. TOTAL SCAM!

**Date of experience:** December 17, 2024

94.    These reviews are merely a sampling of the negative comments consumers have
left about Defendant's deceptive billing and cancellation policies and practices.

95.    Defendant is well aware that its website and billing practices are fraudulent and
deceive consumers.

34

### III.    Hotmart Violates the Electronic Funds Transfer Act ("EFTA") and Regulation E.

96.    The purpose of the Electronic Funds Transfer Act ("EFTA") is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights." 15 U.S.C. § 1693(b).

97.    "Electronic funds transfer" is defined in Regulation E to mean "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account." 12 C.F.R. § 205.3(b).

98.    15 U.S.C. 1693e(a) states:

A preauthorized electronic funds transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer. The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

99.    Similarly, the implementing regulation, 12 C.F.R. § 205(10)(b), states:

(b) *Written authorization for preauthorized transfers from consumer's account.* Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer.

100.    Defendant did not provide a copy of the authorization for preauthorized transfers to Plaintiffs or class members at the time of signup.

101.    In multiple instances, Defendant debited bank accounts of Plaintiffs and class members without obtaining a written authorization signed or similarly authenticated by the Plaintiff or class members for preauthorized electronic fund transfers from the accounts of Plaintiffs or class members, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a),

and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

102.    In multiple instances, Defendant debited Plaintiffs' and class members' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by Plaintiffs or class members for preauthorized electronic funds transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

103.    In multiple instances, Defendant debited Plaintiffs' and class members' bank accounts on a recurring basis after Plaintiffs and class members revoked consent to such debits, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. 205.10(b).

## CLASS ALLEGATIONS

104.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

105.    The proposed classes ("Classes") are defined as follows:

National Class: All persons in the United States who, within the applicable statute of limitations, purchased a product on Hotmart and were subsequently charged again for the same product or additional products without going through the purchase process.

New York Class: All persons in New York who, within the applicable statute of limitations, purchased a product on Hotmart and were subsequently charged again for the same product or additional products without going through the purchase process.

Washington Class: All persons in Washington who, within the applicable statute of limitations, purchased a product on Hotmart and were subsequently charged again for the same product or additional products without going through the purchase process.

California Class: All persons in California who, within the applicable statute of limitations, purchased a product on Hotmart and were subsequently charged again for the same product or additional products without going through the purchase process.

106.    The National Class, New York Class, Washington Class, and California Class, are herein referred to as the Classes.

107.    Excluded from the Classes are (i) Defendant and Defendant's subsidiaries and affiliates; (ii) Defendant's officers, directors, and employees; (iii) entities in which Defendant has a controlling interest; (iv) the judicial officer(s) to whom this action is assigned; and (v) the immediate family members, legal representatives, heirs, successors, or assigns of any party excluded under (i)–(iv).

108.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes and to add subclasses before this Court determines whether certification is appropriate.

109.    This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

110.    As to numerosity: The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

111.    As to commonality: The questions here are ones of common or general interest such that there is a well-defined community of interest among Class members. These questions predominate over questions that may affect only individual class members because Hotmart has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

- whether Defendant engaged in the conduct alleged herein;

- whether Defendant's conduct was deceptive;

- Whether Defendant's website is false and misleading;

- Whether Defendant charged customers without their authorization;

- Whether Defendant charged customers more than the price listed on the website;

- whether Defendant's conduct caused class members harm;

- whether Defendant's conduct violated state consumer protection laws;

- the appropriate measure of damages; and

- whether Plaintiffs and the classes are entitled to declaratory relief, injunctive relief, restitution, or a combination of these.

112.    As to typicality: Plaintiffs' claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Defendant, as described herein. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiffs and absent Class members are substantially the same because the challenged practices are uniform for Plaintiffs and Class members. Accordingly, in pursuing their own self-interest in litigating the claims, Plaintiffs will also serve the interests of the Classes.

113.    As to adequacy: Plaintiffs are more than adequate representatives of the Classes pursuant to Rule 23 in that Plaintiffs are a purchasers of Hotmart products and have suffered damages as a result of Hotmart's deceptive practices. Additionally, (i) Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated; (ii) Plaintiffs have retained competent counsel experienced in the prosecution of class actions; (iii) there is no conflict of interest between Plaintiffs and the unnamed members of the Classes; (iv) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and (v) Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and address the legal issues associated with this type of litigation.

114.    As to predominance: The matter is properly maintained as a class action under Rule 23 because the common questions of law and fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class members.

115.    As to superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter pursuant to Rule 23 because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiffs and Class members to individually seek redress for Defendant's wrongful conduct.

116.    Additionally, the classes are numerous enough to render joinder of all members or the maintenance of separate suits impracticable. Even if any individual person or group of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive resolution by a single court. Further, the difficulties likely to be encountered in the management of this action as a class action are minimal.

117.    In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party or parties opposing the Classes and would lead to repetitious trials of many common questions of law and fact.

118.    Plaintiffs know of no difficulty to be encountered in the management or maintenance of this action that would preclude its maintenance as a class action. But absent a class action, Plaintiffs and Class members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

119.    For all these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this action.

120.    As stated above, Defendant has acted or refused to act on grounds generally

applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

121.    All conditions precedent to bringing this action have been satisfied, waived, or both.

**FIRST CLAIM FOR RELIEF**
**Deceptive Acts or Practices – N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiffs and the Nationwide Class**
**and/or in the alternative, the New York Class subclass)**

122.    Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully restated here.

123.    New York law applies to the classes because New York has a significant interest in regulating the conduct of businesses operating within its borders. Moreover, the principal place of business of Hotmart's U.S. business is in New York, which constitutes the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including decisions related to cancellation policies.

124.    Plaintiffs bring this action on behalf of a Nationwide Class because the acts and practices occurred in New York, as Hotmart operated and continues to operate its scheme from its nerve center in New York, including but not limited to the processing of transactions.

125.    In the alternative, Plaintiff Simmons brings this claim on behalf of a New York subclass.

126.    N.Y. Gen. Bus. Law § 349(a) provides that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

127.    The deceptive acts or practices and the furnishing of Hotmart products took place in this State because Hotmart operates in this State and implemented its deceptive cancellation practices in this state. Therefore, the underlying transactions occurred in New York.

128.    Defendant's marketing and billing practices are consumer-oriented in that they are directed at members of the consuming public.

129.    Plaintiffs purchased Defendants products and services for personal, family, or household purposes.

130.    By engineering and implementing unfair, deceptive, false, and/or misleading billing and advertising practices, Defendant engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349.

131.    Defendant has violated N.Y. Gen. Bus. Law § 349 by, *inter alia*:

    a.    Engaging in a marketing and billing program that is likely to mislead a reasonable consumer acting reasonably under the circumstances;

    b.    Failing to disclose that purchases will result in the consumer being charged for additional products not disclosed at the time of purchase;

    c.    Charging customers for one product, only to tack on additional, unexpected, and unauthorized charges and fees without providing notice to the consumer of the same;

    d.    Posting unauthorized charges to consumer's financial accounts without their authorization and without disclosing these additional charges to consumers;

    e.    Failing to disclose clearly and conspicuously that purchases will result in monthly or weekly charges that will automatically renew;

    f.    Failing to allow consumers to cancel their Hotmart subscriptions;

    g.    Failing to honor consumers' Hotmart subscription cancellations; and

    h.    Continuing to post unauthorized charges to consumers' financial accounts after the cancellation of their Hotmart subscriptions.

132.    The aforementioned acts are unfair, unconscionable and deceptive and are contrary to the public policy of New York, which aims to protect consumers.

133.    Furthermore, N.Y. Gen. Bus. Law § 527-a(1) (a) provides that "It shall be unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to . . . fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services."

134.    N.Y. Gen. Bus. Law § 527-a(3) provides "a consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service exclusively online, which may include a termination email formatted and provided by the business that a consumer can send to the business without additional information."

135.    In addition to its outright violation of GBL § 349 through the levying of deceptive and unauthorized charges on customers for products they did not purchase, Defendant's conduct with regard to the subscriptions charged to Plaintiffs also violated N.Y. Gen. Bus. Law § 527-a, which in turn constituted a violation of GBL § 349.

136.    N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

137.    Plaintiffs and the classes have been injured by Hotmart's violations of N.Y. Gen. Bus. Law § 349.

138.    Hotmart's unlawful, misleading and deceptive conduct occurred, and continues to occur, in the course of Hotmart's business.

139.    As an actual and proximate result of Defendant's misconduct, Plaintiffs and the

Nationwide Class or, in the alternative, the New York subclass, were injured and suffered damages.

140.    Hotmart is liable to Plaintiffs and the Classes or, in the alternative, the New York subclass for damages in amounts to be proven at trial.

141.    Plaintiffs and Nationwide Class Members, or in the alternative, the New York subclass further seek equitable relief against Defendant. Pursuant to N.Y. Gen Bus. Law § 349, this Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to refund to Plaintiffs and Class Members all fees wrongfully assessed and/or collected through its unauthorized charges and through its auto-renewal subscription plan.

142.    Plaintiffs and the Nationwide Class, or in the alternative, the New York subclass make claims for actual and statutory damages, attorneys' fees and costs pursuant to GBL § 349(h).

## SECOND CLAIM FOR RELIEF
### Deceptive Acts or Practices – N.Y. Gen. Bus. Law § 350
### (On Behalf of Plaintiffs and the Nationwide Class
### and/or in the alternative, the New York Class subclass)

143.    Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully restated here.

144.    New York law applies to the Nationwide Class because New York has a significant interest in regulating the conduct of businesses operating within its borders. Moreover, the principal place of business of Hotmart's U.S. business is in New York, which constitutes the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including decisions related to cancellation policies.

145.    Plaintiffs bring this action on behalf of a Nationwide Class, or in the alternative the New York subclass, because the acts and practices occurred in New York.

146.    N.Y. Gen. Bus. Law § 350 declares unlawful "[f]alse advertising in the conduct of

any business, trade or commerce."

147.    Defendant's advertising of its products, including the NeoCash Card, Google Captchas, and other products described above and throughout, is "false advertising" under GBL § 350-a.

148.    Defendant engaged in consumer-oriented conduct that was misleading and directed at the consuming public.

149.    Defendant violated GBL § 350 by falsely advertising its products as being for sale for a certain price, when, in fact, a purchaser would actually be charged additional fees after purchasing the product.

150.    Defendant also violated GBL § 350 by failing to disclose that Plaintiffs and class members would be charged additional fees after purchasing products, and that the price listed was not the true price of the product. Defendant also failed to disclose that by entering in payment information, Plaintiffs and class members would be providing that information to Defendant, who would then charge Plaintiffs for additional undisclosed products without Plaintiffs' authorization.

151.    As a result of the deceptive representations and omissions made by Defendant on its products and their prices, Defendant has deceived Plaintiffs and the class members.

152.    Defendant's deceptive conduct and false advertising occurred in the course of engaging in trade or business.

153.    Defendant willfully, with disregard and/or maliciously violated GBL § 350.

154.    Plaintiffs and Nationwide Class, or in the alternative the New York subclass, members purchased Defendant's products, and suffered actual harm as a result of Defendant's misrepresentations and omissions.

155.    As an actual and proximate result of Defendant's misconduct, Plaintiffs and the Nationwide Class, or in the alternative the New York subclass, were injured and suffered damages.

156.    Defendant is liable to Plaintiff and the Nationwide Class, or in the alternative the New York subclass, for damages in amounts to be proven at trial.

157.    N.Y. Gen. Bus. Law § 350-e provides that "any person who has been injured by reason of any violation section three hundred fifty or three hundred fifty-a of this article may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his actual damages or five hundred dollars, whichever is greater, or both."

158.    Plaintiffs and the Nationwide Class, or in the alternative the New York subclass, make claims for actual and statutory damages, attorneys' fees and costs pursuant to GBL § 350-e. Additionally, Plaintiffs and the Nationwide Class, or in the alternative the New York subclass, seek injunctive relief to stop the ongoing deceptive advertising.

**THIRD CLAIM FOR RELIEF**
**Violation of the Electronic Funds Transfer Act**
**15 U.S.C. § 1693, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class)**

159.    Plaintiffs incorporate the preceding paragraphs of this Amended Complaint as if fully set forth herein.

160.    Plaintiffs seeks to recover for Defendant's violations of the Electronic Funds Transfer Act on behalf of themselves and the Nationwide Class.

161.    The EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system.[8] The "primary objective" of the EFTA "is the provision of individual consumer rights."[9]

162.    Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right

---

[8] 15 U.S.C. §§ 1693, *et seq.*

[9] *Id.* § 1693(b).

conferred or cause of action created by this subchapter."[10]

163.    Defendant's transfers of money from the financial accounts of Plaintiffs and Nationwide Class Members, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205, *et seq.* An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account."[11] The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal."[12]

164.    The EFTA defines the term "preauthorized electronic transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals."[13] The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer."[14]

165.    Section 1693e(a) of the EFTA prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." Similarly, Regulation E provides: "Preauthorized electronic fund

---

[10] *Id.* § 1693(l).

[11] *Id.* § 1693(a)(7).

[12] 12 C.F.R. § 205.3(b)(v).

[13] 15 U.S.C. § 1693(a)(9).

[14] 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."[15]

166.    Plaintiffs and Nationwide Class Members each maintained an "account" as that term is defined by 15 U.S.C. § 1693(a)(2) and are "consumers" within the meaning of 15 U.S.C. § 1693(a)(5).

167.    Defendant uniformly and routinely initiated preauthorized electronic fund transfers and took money from the bank accounts of Plaintiff and Nationwide Class Members without obtaining their written authorization for the transfers, as required by the EFTA and Regulation E. Specifically, Defendant took money from Plaintiff's and Nationwide Class Members' bank accounts without written authorization when Defendant charged Plaintiff's and Class Members' accounts for additional unauthorized fees and products. Further, Defendant violated the EFTA and Regulation E by taking money from Plaintiff's and Class Members' accounts after Plaintiff and Nationwide Class Members had expressly cancelled their subscriptions and revoked any authorization for such transfers.

168.    The Official Staff Interpretation of Regulation E explains, "when a third-party payee," such as Defendant, "fails to obtain the authorization in writing or fails to give a copy to the consumer . . . it is the third-party payee that is in violation of the regulation."[16]

169.    As a direct and proximate result of Defendant's violations of the EFTA and Regulation E, Plaintiffs and Nationwide Class Members have suffered damages in the amount of the unauthorized debits taken by Defendant.[17] As a further direct and proximate result of

---

[15] *Id.* § 205.10(b).

[16] 12 C.F.R. Part 205, Supp. I, § 205.10(b), cmt. 2.

[17] 15 U.S.C. § 1693(m).

Defendant's violations of the EFTA and Regulation E, Plaintiff and Nationwide Class Members are entitled to recover statutory damages in the amount of "the lesser of $500,000 or 1 per centum of the net worth of the defendant."[18]

170.    Pursuant to 15 U.S.C. § 1693(m), Plaintiffs and Nationwide Class Members are also entitled to recover costs of suit and attorneys' fees from Defendant.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Nationwide Class)

171.    Plaintiffs, individually and on behalf of the Classes, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiffs' statutory claims. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees. Also, if claims are deemed not to be covered by the contract—for example, if Defendant has violated state and federal law, but in such a way that it does not violate the contract, then unjust enrichment will require disgorgement of all improperly assessed subscription fees.

172.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly assessed subscription fees upon Plaintiff and the members of the Classes that cancelled their subscriptions that are unfair, unconscionable, and oppressive.

173.    Defendant has unjustly retained a benefit in the form of some or all of the improper subscription fees to the detriment of Plaintiffs and the members of the Classes.

174.    Defendant has retained this benefit through its illegal automatic renewal and billing schemes, and such retention violates fundamental principles of justice, equity, and good conscience.

175.    Defendant should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiffs and the members of the Classes and should be required to make

---

[18] *Id.* § 1693(m)(a)(2)(B).

restitution to Plaintiffs and the members of the Classes.

## FIFTH CLAIM FOR RELIEF
### Conversion
### (On Behalf of Plaintiffs and the Nationwide Class)

176.    Plaintiffs incorporate the preceding paragraphs of this Amended Complaint as if fully set forth herein.

177.    Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

178.    As a result of the charges made by Defendant to Plaintiffs' and Class Members' financial accounts without authorization and in violation of state and federal law, Defendant has taken money that belongs to Plaintiffs and the Class Members.

179.    Plaintiffs owned and had a possessory right to the funds that were taken by Defendant.

180.    Defendant's wrongful act of charging Plaintiffs without their authorization for products they did not purchase interfered with Plaintiffs' interest in that property.

181.    The amount of money wrongfully taken by Defendant is capable of identification.

182.    Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice.

183.    As a result of Defendant's actions, Plaintiffs and the Class Members have suffered damages.

## SIXTH CLAIM FOR RELIEF
### Fraud
### (On Behalf of Plaintiffs and the Nationwide Class)

184.    Plaintiffs hereby incorporate the preceding paragraphs of this Amended Complaint as if fully set forth herein.

185.    Hotmart created and implemented a scheme through its false and misleading webpages in order to lure customers into providing their credit or debit card information to Hotmart

so that it may extract funds from consumers through its unauthorized billing practices. Hotmart portrayed products as being for sale for a single price on its webpage, but once customers entered their payment information and made a purchase, their accounts were subject to repeated unauthorized charges for the same product, and for additional fees and products not disclosed at purchase.

186.   Defendant made false and misleading statements on its websites through its misrepresentations and omissions concerning the price of products. Specifically, Hotmart represented the NeoCash Card, Google Captcha, and other products as being available for purchase for a single price, as described further throughout this Amended Complaint. Defendant did not disclose that once a consumer input their information into Hotmart's website, they would be charged multiple additional fees and charges above and beyond the purchase price.

187.   After Plaintiffs and class members entered their payment information, Hotmart fraudulently and illegal charged Plaintiffs and class members repeatedly for the same product, and charged customers for products they did not purchase or authorize.

188.   Hotmart's conduct was fraudulent and deceptive because misrepresentations and omissions at issue were likely to, and in fact did deceive, reasonable customers by luring them into providing their payment information to Hotmart under the belief that they were purchasing a single product. However, in fact, Hotmart intended to, and did, charge Plaintiffs and class members cards repeatedly for unauthorized charges and products not disclosed on the website.

189.   Hotmart knew or should have known that their misrepresentations and omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

190.   Plaintiffs and class members did in fact rely on Hotmart's misrepresentations and omissions that they were only going to be charged for a single product as disclosed at checkout.

Plaintiffs and class members would not have purchased products from Hotmart or provided their payment information to Hotmart if they knew about Hotmart's deceptive billing scheme.

191.    Hotmart's conduct actually and proximately caused Plaintiffs and class members to lose money. Without Hotmart's unfair and fraudulent conduct, Plaintiffs and Class Members would not have purchased Hotmart products or would not have turned over their payment information to Hotmart. The misrepresentations and omissions induced Plaintiffs and Class Members to purchase products they otherwise would not have. Plaintiffs, individually and on behalf of the members of the classes, seek restitution, injunctive relief, actual damages, attorneys' fees, punitive damages, and all other relief allowable under the law.

**SEVENTH CLAIM FOR RELIEF**
**Violation of the Washington Consumer Protection Act**
**Wash. Rev. Code §§ 19.886.020, *et seq.***
**(On Behalf of Plaintiff Hoar and the Washington Class)**

192.    Plaintiff Hoar incorporates the preceding paragraphs of this Amended Complaint as if fully set forth herein.

193.    Plaintiff Hoar brings this claim individually and on behalf of the members of the Washington Class against Defendant.

194.    The Washington Consumer Protection Act provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." WASH. REV. CODE § 19.86.020.

195.    The Defendant is a "person," as defined by Wash. Rev. Code § 19.86.010(1).

196.    Defendant advertised, offered, or sold products or services to Washington consumers and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code § 19.86.010(2).

197.    Defendant has violated the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.020.

198.    Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation Wash. Rev. Code § 19.86.020, by, *inter alia*, (i) failing to disclose to consumers that after their purchase they would be charged for additional items and fees not disclosed at purchase; (ii) repeatedly charging customers for products that the customers did not purchase and did not authorize Hotmart to charge for; (iii) luring customers into providing their debit or credit card information to Hotmart for purpose of purchasing a single product, only to subsequently levy repeated, unauthorized charges to customers' debit or credit card (iv) Charging customers repeatedly for the same product without the customers consent and authorization (v) failing to clearly disclose to consumers, prior to the completion of a purchase, that certain Hotmart products will automatically renew for a monthly or weekly, recurring fee; (vi) enrolling consumers in Defendant's automatically renewing subscription without the consent or authorization of consumers;   (vii) failing to allow Plaintiff and Class Members to cancel their Hotmart subscriptions; (viii) failing to honor Plaintiff's and Class Members' subscription cancellations; and (ix) continuing to post unauthorized charges to Plaintiff's and Class Members' financial accounts after the cancellation of their subscriptions.

199.    Such acts or practices cause injuries to consumers and are unfair and deceptive because consumers incur charges that are not commensurate with the consumers' reasonable expectations and end up paying for goods and services they never authorized.

200.    Consumers cannot avoid any of these injuries caused by Defendant's deceptive advertising, representations, and practices regarding Hotmart's products.  Accordingly, the injuries Defendant caused outweigh any possible benefit, if any exists, from Defendant's marketing and enrollment process for the subscription products.

201.    Defendant knowingly and intentionally employed an unfair and deceptive billing policy and practice as described above.

202.    Defendant's advertisements and billing practices are false, misleading, and unreasonable, and constitutes unfair and deceptive conduct. Defendant knew or should have known of its unfair and deceptive conduct.

203.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

204.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Hoar and Washington Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition, if any exist.

205.    Plaintiff Hoar and the Washington Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff Hoar and the Washington Class paid unwarranted and unauthorized charges and subscription fees for products they did not want or receive. Plaintiff Hoar and the Washington Subclass would not have purchased products or services from Defendant in the first place, or would have taken other steps to avoid becoming enrolled in and/or charged for Defendant's goods and subscription products, such that Plaintiff Hoar and the Washington Class would not have paid any money to Defendant for these products, if they had been notified of the full terms and conditions of the products and Defendant's unauthorized billing practices.

206.    As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiff Hoar and Washington Class Members have suffered and will continue to suffer injury and damages.

207.    Plaintiff Hoar and the Washington Class members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

208.    Defendant also engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated MCPA by, *inter alia*, abusing its discretion to interpret undefined terms in a manner harmful to consumers and beneficial to Defendant.

209.    As a direct and proximate result of Defendant's conduct, Plaintiff Hoar and Washington Class members have suffered actual damages.

## EIGHTH CLAIM FOR RELIEF
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")
#### (Cal. Bus. & Prof. Code §§ 17200, *et seq*.)
#### (On behalf of Plaintiff Arias and the California Class)

210.    Plaintiff Arias hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

211.    Plaintiff Arias and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

212.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

213.    Defendant violated the UCL by engaging in "unlawful, unfair, and fraudulent business ats or practices" and engaging in "unfair, deceptive, untrue or misleading advertising," including advertising false and deceptive reference prices on its Products. Cal. Bus. & Prof. Code § 17200.

### *(a) Unlawful Prong*

214.    As a result of engaging in the conduct alleged in this Complaint, Defendant has violated the UCL's proscription against engaging in "unlawful" conduct by virtue of their violations of the following laws:

(1)    **California Bus. & Prof. Code § 17500**: As further detailed in this Complaint, Defendant violated California's False Advertising Law, Cal. Bus. & Prof. Code § 17500.

(2) **The Electronic Funds Transfer Act**: As detailed in this Complaint, Defendant violated 15 U.S.C. § 1693e.

(3) **Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)**: As alleged below, Defendant's conduct, individually and collectively, violates section 1770(a)(5), (7), and (9) of the CLRA. Therefore, Defendant has also violated the UCL's "unlawful" provision.

215.    Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date. Unless restrained and enjoined, Defendant will continue to engage in the unlawful conduct described herein.

216.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the Class. As described herein, Defendant made false and deceptive advertisements and representations regarding the prices of its products and the number of times consumers would be charged. Defendant also deceptively and unlawfully charged Plaintiff Arias for the same transaction multiple times and charged Plaintiff additional fees not disclosed at checkout. But for Defendant's unlawful and unfair conduct, Plaintiff Arias and California Class members would not have purchased the products.

217.    Plaintiff Arias has suffered injury in fact and have lost money as a result of Defendant's conduct.

218.    Accordingly, Plaintiff Arias and California Class Members seek restitution from Defendant of all money obtained from Plaintiff Arias and the California Class as a result of Defendant's unlawful acts.

### (b) Unfair Prong

219.    As a result of engaging in the conduct alleged herein, Defendant has violated the

UCL's proscription against "unfair" business practices.

220.    Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

221.    Defendant's unfair conduct alleged in the Complaint is illegal, deceptive, unethical, and unscrupulous. Under federal and state law, making false and deceptive claims about the price of products being marketed and sold to consumers and charging customers payment methods without authorization violates the UCL.

222.    Defendant's deceptive marketing gave consumers the false impression that their payment method would only be charged once for the product they were purchasing.

223.    Additionally, Defendant's deceptive billing practices caused consumers harm by charging them multiple times for a single product without authorization and charging them for products they did not purchase.

224.    Furthermore these acts and practices offend public policy by violating the CLRA and the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code 17500, *et seq*.

225.    Defendant's conduct was and continues to be of no benefit to purchasers of the products, as it is misleading, unfair, unlawful, and is injurious to consumers.

226.    Therefore, Defendant's conduct was and continues to be "unfair."

227.    Defendant's violations of the UCL continue to this day. Unless restrained and enjoined, Defendant will continue to engage in the unfair conduct described herein.

228.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff Arias, as well as the California Class members.

229.    The harm to Plaintiff Arias and members of the California Class outweighs the

utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

230.    Accordingly, Plaintiff Arias and the California Class seek restitution from Defendant of all money obtained from Plaintiff Arias and the California Class members as a result of Defendant's unfair competition.

### (c) Fraudulent Prong

231.    As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "fraudulent" business practices.

232.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant affirmatively misrepresented the price of products, and omitted the fact that consumers would actually be charged more for the product, charged multiple times for a product, and charged for products they did not even purchase. Defendant's fraudulent billing practices resulted in a scheme to gain control of Plaintiff Arias and California Class members' payment information and bill them for fees that were not disclosed and products they did not purchase.  Because Defendant misled Plaintiff Arias and members of the California Class and engaged in actual fraudulent conduct of stealing money from these customers, Defendant's conduct was "fraudulent."

233.    Defendant's website and scheme designed to lure consumers into divulging their credit or debit card information was reasonably likely to deceive consumers, and in fact did deceive Plaintiff Arias and the California Class and induce them into purchasing Defendant's products.

234.    Defendant knew its products were actually scams designed to gain control of Plaintiff Arias and Class members' payment information and repeatedly bill them without their authorization.

235.    If not for Defendant's fraudulent acts and practices, Plaintiff Arias would not have

purchased the products.

236.    As a result, Plaintiff Arias and California Class Members suffered substantial injury and lost money due to Defendant's conduct.

237.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff Arias and California Class Members.

238.    Plaintiff Arias requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future.

**NINTH CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA'S FALE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq***
**(On behalf of Plaintiff Arias and the California Class)**

239.    Plaintiff Arias hereby incorporate by reference the allegations contained in the preceding paragraphs of this Amended Complaint.

240.    This Claim is brought on behalf of the California class, which is referred to in this section as the "Class."

241.    Defendant violated Cal. Bus. & Prof. Code §§ 17500.

242.    The California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*., by states, in part, that:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any

other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, **which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…**

Cal. Bus. & Prof. Code § 17500. (emphasis added).

243.    As alleged more fully above, Defendant has violated § 17500, *et seq*., through the false advertised price of the product, the omissions regarding the multiple charges for the products, the omissions regarding being charged more for the product than advertised at checkout, the omission regarding the additional repeated charges for products not purchased or disclosed at checkout, the false representations that the product was only available for a limited time in accordance with a ticking clock at the top of the screen.

244.    Defendant intended to and did mislead Plaintiff Arias and the California Class by making misrepresentations and omissions about their products and prices as described herein.

245.    Defendant knew or should have known that their misrepresentations and omissions were untrue and misleading. And deliberately made the aforementioned representations and omissions in order to deceive consumers like Plaintiff Arias and the California Class Members. This is evidenced by the numerous reviews online regarding these products and others and regarding the billing practices of Defendant.

246.    These misrepresentations and omissions were material to the decision of Plaintiff Arias and the California Class Members to purchase the products. A reasonable consumer would not expect, based on Defendant's disclosures on its website that they would be subject to repeated and additional unauthorized charges once they input their payment information into Hotmart's website. Plaintiff Arias and the California Class Members would not have purchased the product if they knew the price was false and that they would be subject to multiple charges, above and beyond the purchase price.

247.    As a direct and proximate result of Defendant's violation of the FAL, Plaintiff Arias and California Class Members suffered substantial injury and lost money.

248.    Pursuant to Cal. Bus. & Prof. Code § 17535, this Court has the power to award such equitable relief, including but not limited to an order declaring the prices listed on Defendant's Products' to be unlawful, declaring Defendant's billing scheme to be unlawful, an order enjoining Defendant from engaging in any such further unlawful conduct, and an order directing Defendant to refund to Plaintiff Arias and California Class Members all monies wrongfully collected as a result of its false advertisements.

### TENTH CLAIM FOR RELIEF
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq*.,**
**(On behalf of Plaintiff Arias and the California Class)**
**(Injunctive Relief Only)**

249.    Plaintiff Arias hereby incorporates by reference the allegations contained in the preceding paragraphs of this Amended Complaint.

250.    Plaintiff Arias and members of the California Class are "consumers," as that term is defined by Civil Code § 1761(d), because they purchased Products for personal, family, or household purposes.

251.    Plaintiff Arias and California Class members have engaged in a "transaction" with Defendant, as that term is defined by Civil Code § 1761(e).

252.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for purposes of the CLRA, and was undertaken by Defendant in transactions intended to result in, and which resulted in, the sale of goods or services to consumers.

253.    As described more fully above, Defendant made and disseminated untrue and

misleading statements of fact and omissions in its advertisements and on its website to consumers. Defendant did by advertising false prices for products on its website, omitting the consumers would be charged multiple times for the same product, omitting that customers would be charged additional higher fees above and beyond the price of the product, omitting that customers would be billed for additional charges and products they did not purchase and did not authorize.

254.    Defendant also created a deceptive scheme in order to lure consumers into providing their credit or debit card information to Defendant in order that Defendant may charge consumers for additional unwanted and unauthorized charges and purchases not disclosed at checkout. These deceptive acts and practices violate the CLRA.

255.    As a result of Defendant's conduct, Plaintiff Arias and California Class members purchased Defendant's products for their personal use.

256.    By engaging in the conduct described herein, Defendant has violated the following subdivision of California Code § 1770(a) by:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have
>
> …
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> (9) Advertising goods or services with intent not to sell them as advertised.
>
> (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; and
>
> (29) (A) Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges

257.    Defendant Hotmart advertised and represented products on its website with the "intent not to sell" them as advertised and misrepresenting product characteristics and standards because, as explained herein, the false prices advertised in connection with products offered on

the website misled and continue to mislead customers into believing they were only paying one single price for a product. Additionally, Defendant's omitted that they would bill consumers repeatedly for the same product, charge consumers more than the price shown on the website, and charge consumers for additional fees and products not disclosed at checkout. These omissions misled and continue to mislead consumers into turning over their payment information to Hotmart so that Hotmart can repeatedly bill consumers without their authorization or consent.

258.    Defendant intended for Plaintiff Arias and the California Class to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged above.

259.    Defendant's violations of the CLRA proximately caused injury in fact to Plaintiff Arias and the California Class.

260.    Defendant continues to violate the CLRA and continues to injure the public by misleading consumers about its products and billing practices, and through its unauthorized and illegal billing scheme. Accordingly, Plaintiff Arias seeks injunctive relief on behalf of the general public to prevent Hotmart from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff Arias, and the California Class Members, and members of the general public may be irreparably harmed or denied an effective and complete remedy if such an order is not granted.

261.    In accordance with California Civil Code 1780(a), Plaintiff Arias and the California Class Members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

262.    Pursuant to Cal. Civ. Code § 1782(a), Plaintiff's counsel will notify Defendant of the particular violations of 1770 of the CLRA and demanded that it both rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's

intent to act. If Defendant fails to respond to Plaintiff Arias's letter or fails to agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within thirty days of the date of the written notice, as proscribed by section 1782, Plaintiff Arias will move to amend this Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate, against Defendant. However, as to this cause of action, at this time, Plaintiff Arias seeks only injunctive relief.

## **PRAYER FOR RELIEF**

For the foregoing reasons, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

(a)    Certification for this matter to proceed as a class action on behalf of the Classes pursuant to Rule 23;

(b)    Appointment of the Plaintiffs as representatives of the Classes;

(c)    Appointment of counsel for Plaintiffs as Lead Counsel for the Class;

(d)    A finding that Defendant's practices are in violation of state consumer protection statutes;

(e)    Restitution of all amounts improperly paid to Hotmart by Plaintiffs and members of the Classes as a result of the wrongs alleged herein in an amount to be determined at trial (except for the claim for violation of the CLRA, which at this stage only seeks injunctive relief);

(f)    Actual damages in an amount according to proof (except for the claim for violation of the CLRA, which at this stage only seeks injunctive relief);

(g)    Statutory damages as allowed by law (except for the claim for violation of the CLRA, which at this stage only seeks injunctive relief);

(h)    An award of pre-judgment and post-judgment interest at the maximum rate permitted by applicable law (except for the claim for violation of the CLRA, which at this stage only seeks injunctive relief);

(i)    An award of costs and attorneys' fees under the common fund doctrine and all other applicable law; and

(j)    Declaratory and injunctive relief on behalf of the general public.

(k)    Plaintiffs also requests such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Amended Class Action Complaint that are so triable.

Dated: January 3, 2025

**REESE LLP**

By: */s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:  (212) 643-0500
*mreese@reesellp.com*

**JENNINGS & EARLEY PLLC**
Christopher D. Jennings*
Tyler B. Ewigleben*
Winston S. Hudson*
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (601) 270-0197
*chris@jenningspllc.com*
*tyler@jenningspllc.com*
*winston@jenningspllc.com*

*Attorneys for Plaintiffs and the Proposed Classes*

*\*to file for pro hac vice*