**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TIMOTHY HOAR, THOMAS SIMMONS,
and TIMOTHY ARIAS, individually and on
behalf of all others similarly situated,

                                        Plaintiffs,

    -against-                                                    No. 1:24-cv-06195-CM

LAUNCH PAD PAYMENT SERVICES CORPORATION
and HOTMART BV,

                                        Defendants,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/12/2025

## DECISION AND ORDER DIRECTING JURISDICTIONAL DISCOVERY

McMahon, J.:

Plaintiffs Timothy Hoar, Thomas Simmons, and Timothy Arias, individually and on behalf

of all others similarly situated, commenced this purported-class action against Defendants Launch

Pad Payments Services Corporation ("Launch Pad") and Hotmart BV ("Hotmart") (collectively as

"Defendant" or "Hotmart") for violations of N.Y. Gen. Bus. Law §§ 349 and 350, the Electronic

Funds Act (15 U.S.C. § 1693, *et seq*), unjust enrichment, conversion, fraud, the Washington

Consumer Protection Act (Wash. Rev. Code §§ 19.886.020, *et seq.*), California's Unfair

Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), California's False

Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500, *et seq*), and the Consumers Legal

Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, *et seq.*) *See* Dkt. No. 40.

Defendants have moved to dismiss the Complaint in its entirety under Rule 12(b)(6) and

Rule 23(b)(3) of the Federal Rules of Civil Procedure. *See* Dkt. No. 43.

It is clear enough that most, if not all, of the Complaint would survive a motion to dismiss.

However, first we must decide whether the case as against the principal defendant – Hotmart – is

1

appropriately brought in this district. Because discovery is needed to answer that question, I deny the pending motion without prejudice to renewal on a fuller record, and I give the parties 45 days to take the needed discovery and report the results to the Court.

## BACKGROUND

In order to deal with the venue/forum non conveniens aspects of this case – which are a function of the forum selection clause contained in Hotmart's Terms of Service – it is necessary to discuss the key allegations of the First Amended Complaint, together with documents incorporated therein that the Court may properly consider. *Nicosia v. Amazon.com, Inc.*, 34 F.3d 220, 230 (2d Cir. 2016). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006). For purposes of this motion, the Court accepts those facts (although not Plaintiffs' legal conclusions) as true, and construes them in the light most favorable to Plaintiffs. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).[1]

### I.    THE PARTIES

Plaintiff Timothy Hoar is a citizen and resident of Winlock, Washington.

Plaintiff Timothy Arias is a citizen and resident of Sacramento, California.

Plaintiff Thomas Simmons is a citizen and resident of Brooklyn, New York.

Defendant Launch Pad Payment Services is a Delaware Corporation with its principal place of business and headquarters in New York City, New York.

---

[1] Almost every document dehors the pleading that is referenced by Defendants in their motion to dismiss is NOT something that can be considered on such a motion – just as most of the arguments they make in support of their motion are NOT arguments that are properly considered on a motion addressed to the pleadings. More on that later.

Defendant Hotmart BV as a Dutch company with its headquarters in Amsterdam, Netherlands. Dkt. No. 40 ¶¶ 18, 19.

Hotmart is an online platform, on which users, called "Creators," can list and sell digital products and services, including e-books, online courses, video lessons, and more. *Id.* ¶¶ 23, 25. Consumers who might be interested in products made by the Creators receive advertisements from Hotmart's platform on various social media websites. *Id.* at ¶ 24.

Launch Pad Payment Services is a platform used by Hotmart to process transactions between Creators and Consumers both of whom/which are located in the United States. The Complaint does not explain what if any corporate relationship exists between Hotmart BV and Launch Pad. Due to an unfortunate tendency of Plaintiffs to lump the two corporations together under the rubric "Hotmart," it is difficult to understand what allegations are or might be made against Launch Pad independent of those against Hotmart. In this opinion, "Hotmart" refers only to the Dutch corporation; and references to Launch Pad or its activities will be identified as such.

## II.    Timothy Hoar's Purchases

Plaintiff Timothy Hoar is a Consumer. He alleges that, on or around August 20, 2023, he viewed an advertisement on Facebook for a product called "NeoCash Card." Dkt. No. 40, ¶ 27. Hoar clicked the ad and was taken to a website operated by Hotmart, where he purchased the NeoCash Card for $9.95. *Id.* ¶ 28. Hoar also purchased a product called "Life Upgrade" for $19.95 which was advertised as extending the time Hoar could access the NeoCash Card. *Id.* ¶ 36.

Hoar asserts that, in the months after making those two purchases, Hotmart either attempted to charge or was successful in charging his debit card for a variety of products he claims never to have purchased. Those unauthorized charges include $89.98 for various products called "Secret

3

Robot," "New Robot," "Joy Diamond," "Automatic Update," and "ProfitPulse Mastery: Accelerated Wealth Coaching." *Id.* ¶ 44. Although some of the charges that were attempted were declined for insufficient funds, Hoar alleges that, between September 2023 and April 2024, he was charged and paid at least $460 to Hotmart for items he never purchased. *Id.* ¶¶ 44, 46. Specifically, Hoar alleges Hotmart signed him up for two subscriptions that he did not authorize. One of these subscriptions charged him $17.62 each month for a service called "Profit Multiplicator;" the other charged him $20.00 each week for a service called "MORE EARNINGS." *Id.* ¶ 45.

Hoar further alleges that he never received the two products that he admittedly did purchase from Hotmart's platform. *Id.* ¶ 49.

### III.    Plaintiff Simmons's Purchases

On or around December 18, 2024, Plaintiff Simmons clicked on an advertisement on Facebook for a product called Google Captcha. He was redirected to a website where he was shown a video claiming he could earn money by reviewing Google Captchas. *Id.* ¶ 59. After watching the video, Simmons clicked on a link that took him to a website operated by Hotmart, where he was instructed to input his payment information to pay $12.00 in order to purchase the Google Captcha product. *Id.* Simmons uploaded his information but never gained access to the Google Captcha product. During December 2024, he was charged a total of $90.86 for products he never authorized or purchased. *Id.* ¶ 61.

### IV.    Plaintiff Arias's Purchases

On or around December 5, 2023, Plaintiff Arias alleges that he viewed an advertisement on Facebook for a way to make money reviewing Google Captchas. *Id.* ¶ 69. Similarly to Plaintiff Simmons, Arias clicked the ad and was taken to a website operated by Hotmart. *Id.* ¶ 70. He then input his payment information and authorized payment of $17.00 to purchase the Google Captcha

product. *Id.* As was the case with Simmons, Arias never gained access to the product he purchased, and he was allegedly assessed unauthorized charges for $54.02 on December 9, 2024, $27.02 on December 23, 2024, and $15.01 on December 30, 2024. *Id.* ¶ 72. Hotmart also repeatedly assessed unauthorized charges on Arias's debit card for a product he never purchased called "BodySync360;" those charges were assessed on December 6, 2024 (for $37.03), December 9 ($15.05), December 27, 2024 ($27.07), December 30, 2024 ($30.03), January 2, 2025 ($27.05), January 2, 2025 ($37.03), and January 2, 2025 ($15.05). *Id.* ¶ 73.

## V.    The Hotmart Checkout Page and Its Terms of Service

According to the Amended Complaint, when a buyer purchases a product from a Creator using Hotmart's platform, the buyer encounters a checkout screen where he is prompted to enter his name as well as his contact and billing information. *Id.* at 25. Below the billing information is a large green button that says, "Buy Now." *Id.* Beneath the "Buy Now" button are three blue hyperlinks which, when pressed, allow the potential buyer to (1) contact the Creator about the product, (2) learn more information about how to fill out the checkout information, and (3) contact Hotmart about payment issues. Hotmart's General Purchasing Terms ("GPT") state that although "[t]he purchase will appear on the card statement or invoice indicating Hotmart's name . . . this consists of a mere identification of Hotmart as a facilitator of payment on the invoice or card statement, and does not make the Platform a seller or make it responsible for the Product, nor its functionality, features, offer, advertising, quality, delivery, exchange or return." Dkt. No. 32–1, § 1.9.

Below those three hyperlinks is a statement that reads: "By clicking 'Buy Now' I declare that I (i) understand that Hotmart is processing this order on behalf of [Creator] and has no responsibility for the content and/or control over it; (ii) agree to Hotmart's Terms of Use, Privacy

Policy and other company policies and (iii) am of legal age or authorized and accompanied by a legal guardian." Dkt. No. 40, at 25. The words "Terms of Use," "Privacy Policy," and "other company policies" are blue hyperlinks to the respective agreements, while the rest of the statement is printed in black. *Id.* A prospective Hotmart buyer does not need to click on the hyperlinks to proceed to complete the purchase; s/he can choose not to read the Terms of Use or Privacy Policy and proceed by clicking the "Buy Now" button. *Id.* However, the links to the Terms of Use and Privacy Policy are prominently and distinctively displayed.

The hyperlinks to Hotmart's Privacy Policy are known in the industry as "browsewrap" agreements -- agreements "which generally post terms and conditions on a website via a hyperlink at the bottom of the screen" and which "do not require the user to expressly assent." *Meyer v. Uber Tech.*, 868 F.3d 66, 75 (2d Cir. 2017). These "browsewrap" agreements differ from "clickwrap" agreements, which "require users to click on an 'I agree' box after being presented with a list of terms and conditions[.]" *Id.*

Hotmart's General Terms of Use ("TOU") start with an Overview, which indicates that "the company you hire to use the Platform and operate your transactions may vary depending on the transaction, depending on the country or countries of residence of the Users(s) and the currency in which the transaction is conducted." TOU, Overview, § C. The Overview further indicates that if a transaction "is carried out in the United States of America between Users who declare residence in the United States of America, the company that collects the amounts from Buyers is the American company Launch Pad Payment Services Corp., headquartered at 251 Little Falls Drive, Wilmington, DE 19808." *Id.* In all other instances, with the exception of transactions that take place in Brazil, the processing company is Hotmark BV in the Netherlands. *Id.*

The TOU includes a forum selection clause, which states as follows:

In case of a dispute between a User and Hotmart that is not related to a specific transaction or the Platform, the exclusive venue to litigate such dispute shall be the courts of the city of Amsterdam. As to any dispute related to a specific transaction on the Platform, the exclusive venue to litigate such dispute depends on the specific Hotmart company that processed the relevant transaction. If the transaction was processed by Brazilian company Launch Pad Tecnologica, Servicios e Pagamentos Ltda,[2] the exclusive venue shall be the courts of the city of Belo Horizonte, Minas Gerais, in Brazil. If the transaction was processed by North  American company Launch Pad Payment services Corp., the exclusive Venue shall be the United States District Court for the Southern District of New York, or the Supreme Court of the State of New York, in this city of New York, in the United States of America. If the transaction was processed by Dutch company Hotmart B.V., the exclusive venue shall be the courts of the City of Amsterdam in the Netherlands.

TOU, § 13.1.

It is readily apparent that where Hotmart can be sued depends on whether the dispute relates to a "specific transaction" that took place on the platform, or to something else. If it relates to a "specific transaction," the exclusive venue for suing Hotmart is a function of where the transaction was processed – in the Netherlands, in Brazil, or in the United States. If, on the other hand, the dispute relates to something other than a "specific transaction," then Hotmart can only be sued in the Netherlands.

## LEGAL STANDARD

"When a forum-selection clause points to a foreign forum, the appropriate way to enforce the clause is through the doctrine of *forum non conveniens*." *SingularDTV GmbH v. Lebeau*, No. X, 2022 WL 6771081, at *3 (S.D.N.Y. Oct. 11, 2022) (citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014)) (quotation marks omitted). In deciding Defendants' motion to dismiss based on a forum selection clause, the Court may rely on the pleadings and affidavits submitted in support of the motion but must resolve all factual questions in favor of the Plaintiff. *Id.* at 216–17.

"In general, to obtain dismissal based on a forum selection clause the party seeking enforcement of the clause must demonstrate that: (1) the clause was reasonably communicated to

---

[2] The Brazilian corporation will hereinafter be referred to as "Launch Pad Tecnologica."

the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause." *Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007)).

The Second Circuit has acknowledged that no Federal Rule of Civil Procedure is designed to address the enforcement of such a clause. *See New Moon Shipping Co. v. MAN B & W Diesel*, 121 F.3d 24, 29 (2d Cir. 1997). "The Supreme Court has not specifically designated a single clause of Rule 12(b) as the 'proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause,' nor [has the Second Circuit]." *Asoma Corp v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2006) (quoting *New Moon* Shipping, 121 F.3d at 28; *citing Carnival Cruise Lines, Inc. v.* Shute, 499 U.S. 585, 589 (1991), and *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 4, 9–19 (1972)).

"Prior to the Second Circuit's decision in *New Moon Shipping*, courts in this district generally treated motions to dismiss based on a forum selection clause as being brought under Rule 12(b)(1) for lack of subject matter jurisdiction, or under Rule 12(b)(3) for improper venue." *American Intern. Group Europe S.A. (Italy) v. Franco Vago Int'l*, 756 F.Supp.2d 369, (S.D.N.Y. 2010) (citing *Asoma Corp.*, 467 F.3d at 822). However, in *New Moon Shipping*, the Second Circuit "refused to pigeon-hole these claims into a particular clause of Rule 12(b)." *Id.* Instead, the "burden [is] on the plaintiff, who brought suit in a forum other than the one designated by the forum selection clause, to make a 'strong showing' in order to overcome the presumption of enforceability." *New Moon Shipping*, 121 F.3d at 29.

## DISCUSSION

Defendants move to dismiss on the grounds that Plaintiffs have filed the Amended Complaint in the United States District Court of the Southern District of New York in violation of the forum selection clause that was included in the Terms of Use.

Plaintiffs insist that they can sue in New York for two reasons: *first*, because they never agreed to the General Terms of Use or the forum selection clause contained therein; *second*, because the claims relate to "specific transactions" that were, at least arguably, processed by Launch Pad, which means they must be heard in this district.

## I.    Plaintiffs' Claims Are Subject to the Forum Selection Clause

The first issue that must be decided is whether the claims in suit are subject to the forum selection clause at all. Plaintiffs assert that they never assented to the clause. I reject that argument.

### a.  *Hotmart's General Terms of Use's Forum Selection Clause is Mandatory*

A forum selection clause is mandatory when it incorporates obligatory language. *Phillips*, 494 F.3d at 386. The General Terms of Use's forum selection clause is clearly mandatory. The phrase "the exclusive venue to litigate such dispute" is a strong indication of the clause's mandatory nature. *See* Dkt. No. 45–2, § 13.1.

Plaintiffs do not dispute that the forum selection clause is mandatory. Instead, they allege that they never assented to it.

### b.  *The Forum Selection Clause Was Reasonably Communicated to Plaintiffs*

Plaintiffs argue that the forum selection clause was not reasonably communicated to them, so they never assented to it. Dkt. No. 49, at 4. As a matter of law, they are incorrect.

Plaintiffs rely on *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016), in which the Second Circuit declined to enforce a mandatory arbitration provision contained in Amazon's

Conditions of Use, which was similarly included as a hyperlink on Amazon's checkout page. *Id.* at 235. At issue in *Nicosia* was whether a consumer had "reasonable notice" of Amazon's terms and conditions when placing an order.

The Second Circuit concluded that "reasonable minds" could disagree about whether Amazon provided sufficient notice of the forum selection clause to the plaintiffs. *Id.* at 237. Focusing on the layout of the page, the Circuit noted that, "The message itself – 'By placing your order, you agree to Amazon.com's...conditions of use' – [was] not bold, capitalized, or conspicuous in light of the whole webpage." *Id.* The Circuit found that Amazon's cluttered webpage, which included numerous other links in a variety of colors, sizes, and fonts, as well as promotional advertisements, the customer's personal address, credit card information, shipping options, and purchase summary, "was sufficiently distracting so as to temper whatever effect the notification has" alerting the consumer that s/he would be bound by additional terms and conditions when placing an order. *Id.* The Circuit also noted that the "Place your order" button was spatially distant from the notification that additional terms would apply: "The presentation of terms is not directly adjacent to the 'Place your order' button so as to indicate that a user should construe clicking as acceptance." *Id.* Adding all of this up, the Court of Appeals concluded that the forum selection clause was not reasonably communicated to the plaintiffs, and so could not be enforced.

However, that case is not this case. Defendant's payment screen stands in stark contrast to the cluttered interface at issue in *Nicosia*. The message warning that, "By clicking "Buy Now" I declare that I...(iii) agree to Hotmart's Terms of Use" – together with the blue hyperlink to the Terms of Use – is located just five lines beneath the "Buy Now" button, rather than in a separate quadrant of the screen, as was the case in *Nicosia*. Dkt. No. 40, at 25. Furthermore, Hotmart's

payment screen does not contain similarly distracting uses of font sizes and colors, or promotional advertisements that would obscure the message that clicking "Buy Now" would subject the purchaser to additional terms and conditions. *Id.*

This case is more closely analogous to *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017) – a case in which the Second Circuit did enforce a hyperlinked forum selection clause. The Court of Appeals held that Uber's payment screen – which closely resembles Hotmart's – "reasonably communicated" to the user that clicking "Sign Up" would bind them to additional terms of use that were included as hyperlinks below the "Sign Up" button. The Second Circuit noted that the relatively uncluttered screen – in combination with the notice message located beneath the "button intended to manifest assent to the terms" – rendered notice reasonable, and did so as a matter of law, not fact. *Id.* at 78.

In *Meyer*, the Second Circuit also held that the fact that Uber had provided notice of additional terms of service "simultaneously to enrollment" in its services indicated that the notice had been reasonably communicated to its prospective users. *Id.* Here, as was the case in *Meyer,* Plaintiffs were provided notice of the terms and conditions simultaneously with their purchase of a product on Hotmart's platform, "thereby connecting the contractual terms to the services to which they apply." *Id.* As the Second Circuit observed in *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 127 (2d Cir. 2012),

> Inasmuch as consumers are regularly and frequently confronted with non-negotiable contract terms, particularly when entering into transactions using the Internet, the presentation of these terms at a place and time that the consumer will associate with the initial purchase or enrollment, or the use of, the goods or services from which the recipient benefits at least indicates to the consumer that he or she is taking such goods or employing such services subject to additional terms and conditions that may one day affect him or her.

Simultaneous communication of terms is the difference between this case and other precedents on which Plaintiffs wrongly rely. For example, Plaintiffs mistakenly rely on *Starke v.*

11

*SquareTrade, Inc.*, 913 F.3d 279, 295 (2d Cir. 2019) and *Carovillano v. Sirius XM Radio Inc.*, 715 F.Supp.3d 562, 580 (S.D.N.Y. Feb. 6, 2025) to support the argument that Hotmart's General Terms of Use were not reasonably communicated. But both of those cases involved notices of additional terms of use made available to consumers *after* they had already completed their purchases. They are, therefore, at stark variance with the facts of this case.

In *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 295 (2d Cir. 2019), the plaintiff purchased a protection plan for consumer products from defendant SquareTrade, Inc through Amazon. SquareTrade moved to compel arbitration based on an arbitration clause which was included in terms and conditions which were only sent to Plaintiff after he had already made his purchase. *Id.* at 284. The Second Circuit held that because the post-sale terms and conditions were "temporally decoupled from the transaction," he had no way to review them until he had already received a confirmation email from SquareTrade. *Id.* at 294.

In *Carovillano v. Sirius XM Radio Inc.*, 715 F.Supp.3d 562, 580 (S.D.N.Y. Feb. 6, 2025), plaintiffs represented a putative class of Sirius XM subscribers who signed up for the service by telephone. My colleague Judge Engelmayer held that because those subscribers had received a link to the additional terms and fees *after* they had made their purchase, the court could not find that notice of the additional terms was reasonably communicated to plaintiffs at the motion to dismiss stage. *Id.*

This case in questionably closest in fact to *Meyer* – so much so that one might wonder whether Hotmart's webpage was designed with that precedent in mind. As a result, I conclude that Hotmart's General Terms of Use were reasonably communicated to Plaintiffs as a matter of law. Plaintiffs cannot get out from under the forum selection clause on the ground that they did not know about it and so could not have assented to it.

### c. *The Forum Selection Clause Applies to Plaintiffs and Their Claims*

Because the forum selection clause is mandatory and was reasonably communicated to Plaintiffs, it will control as long as it applies to the claims in suit. That is an easy question to answer: it applies to all claims of any nature against Hotmart. The forum selection clause contains two separate provisions – one that tells a plaintiff where to sue Hotmart if the claim does not relate to a "transaction," and one that tells a plaintiff where to sue Hotmart if the claim does relate to a "transaction." Ergo, the forum selection clause necessarily applies to the claims in suit.

### d. *It Would Not be Unreasonable to Enforce the Forum Selection Clause Against Plaintiffs*

Even if the forum selection clause was reasonably communicated to the parties, is mandatory, and encompasses the claims and parties in the suit, the clause may not be enforced if doing so would be unreasonable or unjust, or if the clause is invalid because of fraud or overreaching. *Phillips*, 494 F.3d at 384. The party resisting the clause has the burden to the show that the clause is unreasonable or invalid because of fraud and overreaching. *Elite Parfums, Ltd. V. Rivera*, 972 F. Supp. 1269, 1272 (S.D.N.Y. 1995).

The Second Circuit has interpreted this exception narrowly, stating that forum selection clauses are unreasonable or unjust,

> (1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993).

Plaintiffs have made no argument in their opposition papers on this point. They have therefore failed to satisfy their burden to show that the forum selection clause in the General Terms of Use is unreasonable under the circumstances of this case.

## II.     Jurisdictional Discovery Will Reveal the Location of the Correct Forum

Notwithstanding all of the above, there remains a question: which sentence of the forum selection clause applies? The first sentence (non-transaction-related claims) or the second (transaction-related claims).

My answer is: the latter.

The General Terms of Use make clear "In case of a dispute between a User and Hotmart that is *not related to a specific* transaction on the Platform, the exclusive venue to litigate such dispute shall be the courts of the city of Amsterdam, the Netherlands." Dkt. No. 32-2, § 13.1. Plaintiffs insist that their claims do not relate to specific transactions, but rather challenge "deceptive and misleading billing practices used by Launch Pad Payment Services Corporation and Hotmart BV." Dkt. No. 49, at 7. Plaintiffs contend that, in connection with an initial, authorized transaction on Hotmart's site, Defendants obtained their billing information, which they then used to process unauthorized purchases. They contend that this "deceptive and unauthorized billing practice" challenges Hotmart's *modus operandi,* not specific transactions.

However, that is not correct. The complaint itself gives the lie to the argument. Each of the three Plaintiffs alleges that he conducted one or more authorized transactions, and then that Hotmart engaged in a series of unauthorized transactions using Plaintiffs' personal billing information. The fact that Plaintiffs challenge the "deceptive and fraudulent billing practices" that Hotmart allegedly employed in order to engage in unauthorized transactions (theft of billing information) does not change the fact that each of Plaintiff's claims challenges the validity of

14

discrete transactions – transactions that are often pleaded by date and amount. *See* Dkt. No. 40,

¶¶ 44, 66, 84, 147. Product theft of billing information is "not a one-time event at Hotmart," *Id.* ¶

48, and every allegation made by Plaintiffs relates to a specific transaction that allegedly was not

authorized. Plaintiffs' contention that Hotmart used fraud in order to engage in purportedly

unauthorized transactions does not alter the nature of their claims; they are challenging the validity

of transactions posted (or attempted to be posted) to their accounts. That places their claims – all

of them, whether sounding in fraud or some other cause of action – squarely under the second

sentence of the forum selection clause.

But that is only the first step in answering the question, "Which forum is the correct

forum?" That is because the portion of the forum selection clause that governs challenges to

transactions designates multiple potential "exclusive" fora, depending on where a transaction was

processed: "As to any dispute related to a specific transaction on the Platform, the exclusive venue

to litigate such dispute depends on the specific Hotmart company that processed the relevant

transaction." Dkt. No. 32-2, § 13.1. If Hotmart BV processed the challenged transaction, the matter

must be litigated in Amsterdam. If Hotmart's Brazilian partner processed the transaction, the

matter must be litigated in Brazil. And if Launch Pad processed the transaction, any challenge to

the transaction must be brought in either the Southern District of New York or the Supreme Court

of the State of New York.

The problem is that we do not know who processed, or attempted to process, the challenged

transactions in suit. Plaintiffs themselves acknowledge that they do not know who processed the

transactions that are the subject of this lawsuit – who posted the charges (whether authorized or

not) to their accounts. Plaintiffs assume that Launch Pad processed their transactions because they

live in the United States and Launch Pad is a United States (Delaware) corporation. But apparently

15

Launch Pad only processes transactions in which both parties to the transaction reside in the United States. TOU, Overview, § C. Neither Plaintiffs nor the Court have any way of knowing where the counterparty to the transactions is located, and so by whom the transactions (authorized or unauthorized) were processed. Plaintiffs admit as much in their opposition brief, when they state, "Prior to discovery, it impossible to distinguish between Launch Pad Payment Services Corporation and Hotmart B.V. when determining which entity processed the transaction at issue." Dkt. No. 46, at 6.[3]

The answer to this conundrum is simple: we take jurisdictional discovery. Hotmart and Launch Pad have until June 26, 2025, to provide Plaintiffs' counsel with copies of any and all records showing what company processed every transaction referenced in the Amended Complaint – the ones that were admittedly authorized, and the subsequent ones that Plaintiffs contend were unauthorized (a contention that Defendants dispute). Plaintiffs' counsel shall promptly communicate that information to the Court. And armed with that information, I will know whether and to what extent I should address the merits-based arguments on the motion to dismiss or send the dispute elsewhere for adjudication.

One further thought: There is no basis for concluding that the forum selection clause relating to "specific transactions" does not permit suit relating to a United States-based transaction against Hotmart, as opposed to against Launch Pad, which processed the transaction. Put otherwise, Hotmart cannot successfully argue that the forum selection clause's "specific transaction" provision only designates the appropriate exclusive venue against Hotmart when Hotmart itself actually processed the transaction.

---

[3] Plaintiffs appear to presume that their transactions were not processed in Brazil.

Hotmart drafted its General Terms of Use, so those terms, like any contract terms, are construed strictly against it, with any ambiguities resolved in favor of Plaintiffs. The General Terms of Use containing the forum selection clause are entitled "*Hotmart's* General Terms of Use" – not any other corporation's General Terms of Use (such as Launch Pad's) – and they specifically apply to persons "using Hotmart services," which services include the processing of transactions on the Hotmart platform by entities designated by Hotmart.[4] The second sentence of the forum selection clause, concerning where disputes relating to specific transactions must be resolved, refers to "a specific transaction *on the Platform*;" (emphasis added) the introduction to the General Terms of Use states unequivocally that the term Platform encompasses "the www.hotmart.com website and its subdomains indistinctly." TOU, Overview. The Glossary defining capitalized terms was not included in the record on the motion; however, the Court clicked on the link to the Glossary in the General Terms of Use (www.hotmart.com/en/legal/Glossary) and found that the definition was identical to the reference cited in the text: "The website www.hotmart.com and its subdomains, as well as any other websites, interfaces, or applications in which Hotmart makes its resources available." Furthermore, no language in the forum selection clause (which, again, was drafted by Hotmart) limits who can be named as a defendant in suits concerning specific transactions; the clause does not say, for example, that "As to any disputes *between a User and the entity that processed a specific transaction on the Platform,* the exclusive venue to litigate shall be…." (Emphasis on what the forum selection clause does not say).

---

[4] Hotmart Services or Services: Collectively, the resources made available by Hotmart that allow Users to consume, create, promote, or sell Products on the Platform. *See* Glossary of Terms Used By Hotmart, updated March 4, 2024, at www.hotmart.com/en/legal/glossary.

17

Finally, no language in the forum selection clause (which, again, was drafted by Hotmart) limits suits concerning specific transactions to suits brought against the entity that processed the transaction; the clause does not say, for example, that "As to any disputes *between a User and a Hotmart processor* related to a specific transaction on the platform, the exclusive venue to litigate shall be…." (emphasis on terms that do not appear in the General Terms of Use).

Thus, under the Terms of Use, properly construed, Hotmart B.V., the Netherlands corporation, has agreed to be sued concerning the validity or bona fides of a specific transaction in the forum in which a transaction effected over its platform was processed – whether that forum be Brazil, the United States, or The Netherlands. Should it prove that all of Plaintiffs' allegedly unauthorized transactions were processed by Launch Pad, then both Hotmart and Launch Pad can be sued over those transactions in this Court. Whether the facts bear out the argument remains to be seen.

## CONCLUSION

The motion at Dkt. No. 43 is denied without prejudice and should be removed from the Court's list of open motions. Jurisdictional discovery must be completed June 26, 2025. At that point, Defendants are free to renew their motion; they need only to file a new notice of motion and a supplemental brief addressing whatever arguments can be made following jurisdictional discovery. The other arguments made in support of the motion at Dkt. No. 43 will be deemed automatically renewed; there is no need to refile those briefs. Those arguments will be addressed on the basis of the existing briefs if this Court is the proper place for doing so.

There should be no need for any extension of the 45-day deadline; the discovery I have ordered is quite limited and targeted to the open issue.

18

This is a written decision. The Clerk of Court is directed to remove the motion at Docket #43 from the court's list of open motions.

Dated: May 12, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL