UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY HOAR, THOMAS SIMMONS, and TIMOTHY ARIAS, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

LAUNCH PAD PAYMENT SERVICES CORPORATION and HOTMART BV,

Defendants.

Case No.: 1:24-cv-06195-CM



# ELECTRONIC DISCOVERY AGREEMENT AND [PROPOSED] ORDER

This Agreement and [Proposed] Order will govern how the parties manage electronic discovery in the above-captioned case.

## I. IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive documents. The parties will meet and confer regarding any proposed limitations on the scope of discovery, such as custodians and search terms. The parties will not seek Court intervention regarding the methodology to be used to identify responsive information without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

To the extent they exist and are requested, the parties will expedite the production of organizational charts to facilitate the identification of appropriate custodians and will work in good faith to negotiate a mutually agreeable list of custodians for each party's production.

Case 1:24-cv-06195-CM    Document 58    Filed 06/25/25    Page 2 of 13

Where the parties agree that potentially responsive ESI shall be searched through the use of search terms, the parties shall use the process identified below and shall meet and confer regarding any proposed deviation. The receiving party may propose search terms to be used to identify responsive documents. Upon receipt of those search terms, the producing party will provide a search term hit list or hit report after global de-duplication, including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, with and without families. The parties shall then meet and confer regarding the proposed search terms.

## II.    PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

### III. PRODUCTION OF ESI

#### A. Format

Except where otherwise noted in this section, the parties will produce ESI in single-page, black and white, Group IV TIFF images with a resolution of 300 DPI. Spreadsheet and presentation type files, audio and video files, photo or graphic images, and documents with tracked changes in the metadata shall be produced in native format. To the extent the parties agree to produce such documents, short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.) will be produced in RSMF, broken into 24-hour segment with all available metadata and attachments. To the extent RSMF cannot be provided, the parties shall meet and confer on the appropriate metadata fields and format of production. If an original document being produced in image format contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. The parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages will include the BCC line, and documents will display comments and hidden content. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the parties agree to meet and confer in good faith on production format options.

If a document is produced in RSMF or in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the first Bates number it has been

3

assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. The parties retain the right to request that additional documents or classes of documents, not already identified within this protocol, should be produced in native format.

### B. De-Duplication

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

### C. Metadata

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

For ESI other than email and e-documents that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack,

4

Google Docs, etc., the parties agree to meet and confer as to the appropriate metadata fields to be produced, to the extent the parties agree to produce such documents.

### D. Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

### E. Attachments

Unless otherwise agreed, the parties agree that if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced, except any part that must be withheld or redacted on the basis of privilege. If necessary, the parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments will be produced sequentially after the parent communication.

### F. Compressed Files Types

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

### G. Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the parties agree to meet and confer regarding methods of production.

Case 1:24-cv-06195-CM    Document 58    Filed 06/25/25    Page 6 of 13

### H.  Exception Report

The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type, and the file location.

### I.  Encryption

To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

### J.  Redactions

A party may use redactions to protect for privilege, but shall redact no more than is necessary to protect the relevant privileged information. A party shall log the redaction in a privilege log. Each redaction on a document shall be endorsed with the word "redacted" or "redaction," along with the basis for such redaction on the face of the document. (e.g., "Redacted – Attorney Client Privilege").

If documents that the parties have agreed to produce in native format need to be redacted, the parties will implement redactions while ensuring that proper formatting and usability are maintained. Spreadsheets requiring redaction will be redacted using native redaction software and produced in native format.

### K.  Privilege Logs

For all documents withheld, in whole or in part, on the basis of privilege, the parties agree to furnish logs that comply with the legal requirements under federal law, but at a minimum will include the following information:

    a.    A unique number for each entry on the log.

    b.    A Production ID or Bates Number for each entry on the log.

6

c.  The date of document. For emails, this should be the sent date of the document and for other ESI this should be the last-modified and create date of the document.

d.  The Author of the document. For emails, this should be populated with the metadata extracted from the "Email From" field associated with the file. For other ESI, this should be populated with the metadata extracted from the "Author" field; if such field contains generic information such as the company name, a party may substitute the information contained in the "Custodian" metadata field.

e.  If the document is an email, the Subject Line of the email (unless the Subject Line itself contains privileged information).

f.  If the document is ESI other than email, the File Name and Doc Title.

g.  Recipient(s) of the document where reasonably ascertainable. For emails this should be populated with the metadata extracted from the "Email To" field associated with the file. Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated. For emails, this shall include, in addition to the Recipient(s)' name(s), either (a) an email address for each recipient or (b) information sufficient to identify their employer at that time.

h.  A description of why privilege is being asserted over the document. This description should include information sufficient to identify if the document contained attachments over which privilege is also being asserted.

i.  The type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

The parties shall identify on their logs where counsel is present in a conversation, specifically for columns V(d) and (f) noted above. Where counsel's relationship relevant to the

7

privilege is not readily ascertainable from columns V(d) and (g) above, the parties shall include a reference to relevant counsel involved in the privilege description field described in 18(g) above.

To the extent a producing party provides multiple, or supplemental, privilege logs, each such log should contain all previous privilege log entries, such that each privilege log can supersede all prior privilege logs, with any changes to previously produced privilege log entries clearly identified.

Documents presumptively not to be logged on a privilege log include:

a. Communications exclusively between a party or its representative(s) and its trial counsel for this matter, after the commencement of this litigation; and/or

b. Work product created by counsel, an agent of counsel, or a party at the direction of counsel, for this matter, after commencement of this litigation.

## IV. CLAWBACK AND APPLICATION OF FEDERAL RULE OF EVIDENCE 502(D)

In order to allow for expeditious production of documents, pursuant to Federal Rule of Evidence 502(d), a Party may, at its sole option, produce materials without detailed, or any, review to determine whether the production includes Privileged Material. The production of such privileged or work-product protected documents, ESI or other information is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. This Stipulation and Order does not preclude a party from intentionally waiving any claims of privilege or protection.

If information produced is subject to a claim of privilege or work-product protection, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, the receiving party must (i) immediately cease the review and

8

use of the disclosed document or information, except to the extent necessary to determine and/or contest the privilege or protection; (ii) if the receiving party does not challenge the assertion, return, sequester, or destroy the disclosed document or information, as well as any and all copies thereof; and (iii) if the receiving party does not challenge the assertion, destroy or sequester any references to the erroneously or inadvertently disclosed document or its contents.

The receiving party may move the Court for an order compelling production of the inadvertently produced information, but the motion shall not assert as a ground for production the facts or circumstances of the inadvertent production. If a claim is disputed, the receiving party shall not use or disclose the relevant information until the matter is resolved by agreement of the parties or by a decision of the Court.

DATED: June 25, 2025

/s/ Michael R. Reese
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
mreese@reesellp.com

George V. Granade
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
ggranade@reesellp.com

**KALIELGOLD PLLC**
Sophia G. Gold*
950 Gilman Street, Suite 200
Berkeley, California 94710
Telephone: (202) 350-4783
sgold@kalielgold.com

Jeffrey D. Kaliel*
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 280-4783
jkaliel@kalielgold.com

**JENNINGS & EARLEY PLLC**
Christopher D. Jennings*
Tyler B. Ewigleben*
Winston S. Hudson*
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (601) 270-0197
chris@jefirm.com
tyler@jefirm.com
winston@jefirm.com

*Attorneys for Plaintiffs and the Proposed Classes*

/s/ Mario O. Gazzola
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Michael B. Carlinsky
Mario O. Gazzola
Olivia Probetts

295 Fifth Ave.
New York, NY 10016
T: 212-849-7000
F: 212-849-7100
michaelcarlinsky@quinnemanuel.com
mariogazzola@quinnemanuel.com
oliviaprobetts@quinnemanuel.com

*Attorneys for Defendants*

Dated: New York, New York
~~June 25, 2025~~
July 1,

SO ORDERED:

/s/ Colleen McMahon

The Honorable Colleen McMahon
United States District Court Judge

10

## TABLE 1: METADATA FIELDS[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | Email, Attachment, Edoc | The record type of a document. |
| FILE TYPE | Outlook Message File, Adobe Portable Document Format, Microsoft PowerPoint Document | File Type as extracted from the document during processing. Populated as "hardcopy" for scanned documents. |
| SENTDATE_TIME | (MM/DD/YYYY HH:MM:SS) | The date and time the email or calendar entry was sent. |
| RECEIVEDDATE_TIME | (MM/DD/YYYY HH:MM:SS) | The date and time the document was received. |
| CREATEDATE_TIME | (MM/DD/YYYY HH:MM:SS) | The date and time the document was created. |
| LASTMODDATE_TIME | (MM/DD/YYYY HH:MM:SS) | The date and time the document was last modified. |
| MEETING_START_DATE_TIME | (MM/DD/YYYY HH:MM:SS) | Start date and time of calendar entry. |
| MEETING_END_DATE_TIME | (MM/DD/YYYY HH:MM:SS) | End date and time of calendar entry. |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both email and e-files. |
| FILEPATH-DUP | i.e. /JSmith.pst/Inbox /Network Share/Accou | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both email and e-files and separated by semicolons. |

11

| | | |
|---|---|---|
| | nting/…/TJohnsonPC/Users/TJohnson/My Documents/.. | |
| AUTHOR | jsmith | The author or owner of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item. An email address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN | Doe, Jane | Individual from whom the document originated. |
| CUSTODIAN_ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| TRACK CHANGES | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The |

| | | |
|---|---|---|
| | | same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together email threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display Yes. |
| CONFIDENTIALITY | | User-generated field that will indicate confidentiality pursuant to the Protective Order (i.e., CONFIDENTIAL). Otherwise, blank. |
| PGCOUNT | | Number of pages in a document (image records) |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| TEXTPATH | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding Bates numbers. **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1] For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.