USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/9/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

x

TIMOTHY HOAR, THOMAS SIMMONS, AND TIMOTHY ARIAS, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

24-cv-6195 (CM)

LAUNCH PAD PAYMENT SERVICES CORPORATION AND HOTMART B.V.,

Defendants.

x

**DECISION AND ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITHOUT PREJUDICE**

McMahon, J.:

Plaintiffs Timothy Hoar, Thomas Simmons, and Timothy Arias, individually and on behalf of all others similarly situated, commenced this purported class action against Defendants Launch Pad Payments Services Corporation ("Launch Pad") and Hotmart B.V. (together, "Defendants") for violations of N.Y. Gen. Bus. Law §§ 349 and 350, the Electronic Funds Act (15 U.S.C. § 1693, et seq), unjust enrichment, conversion, fraud, the Washington Consumer Protection Act (Wash. Rev. Code §§ 19.886.020, *et seq.*), California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*). California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), and the Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, *et seq.*) *See* Dkt. No. 40.

Before the Court is Defendants' Renewed Motion to Dismiss Plaintiffs' Complaint in its entirety pursuant to Rule 12(b)(6) and Rule 12(b)(3) of the Federal Rules of Civil Procedure. *See* Dkt. No. 70.

For the reasons set forth below, Defendants' Motion is GRANTED, albeit without prejudice. Per the terms of the parties' forum selection clause, the disputes that are the subject of the complaint should be heard in a court in Amsterdam, not New York.

**BACKGROUND**

The Court assumes familiarity with the facts of this case, as set forth in its prior opinion. *See Hoar v. Launch Pad Payment Servs. Corp.*, 2025 WL 1380994 (S.D.N.Y. May 12, 2025) ("*Hoar I*").

Hotmart is an online platform, on which users, called "Creators," can list and sell digital products and services, including e-books, online courses, video lessons, and more. First Amended Complaint ("FAC"), Dkt. No. 40 at ¶¶ 23, 25.

Defendants Launch Pad – a Delaware corporation with its principal place of business in New York – and Hotmart B.V. – a Dutch company headquartered in Amsterdam – are platforms used by Hotmart to process transactions between Creators and consumers.[1]

Plaintiffs are consumers who purchased products through Hotmart after receiving advertisements from Hotmart's platform on social media websites. *Id.* at ¶ 24. Plaintiffs allege that they never received the products they purchased from Hotmart and that, after making an initial

[1] As I explained in *Hoar I*, 2025 WL 1380994, at *2, the complaint is far from a model of clarity as to the corporate relationship between Launch Pad and Hotmart B.V. The FAC states that "Defendants are part of the same family of companies and thus referred to as a single defendant" and refers to both Defendants as "Hotmart." Dkt. No. 40 at 1 n.1. It is therefore difficult to understand what allegations are made against Launch Pad as opposed to those made against Hotmart B.V. For the avoidance of doubt, references to "Hotmart" refer to the online platform; references to Hotmart B.V. refer to the Dutch corporation.

purchase on Hotmart's website, they continued to be charged for additional purchases that they never made or authorized.

On December 5, 2024, Defendants moved to dismiss Plaintiff's FAC on the grounds that Plaintiffs filed their FAC in this District in violation of the forum selection clause in Hotmart's Terms of Use. *See* Dkt. Nos. 43, 44.

The Terms of Use provide:

> In case of a dispute between a User and Hotmart that is not related to a specific transaction or the Platform, the exclusive venue to litigate such dispute shall be the courts of the city of Amsterdam. As to any dispute related to a specific transaction on the Platform, the exclusive venue to litigate such dispute depends on the specific Hotmart company that processed the relevant transaction. If the transaction was processed by Brazilian company Launch Pad Tecnologica, Servicios e Pagamentos Ltda,[2] the exclusive venue shall be the courts of the city of Belo Horizonte, Minas Gerais, in Brazil. If the transaction was processed by North American company Launch Pad Payment services Corp., the exclusive Venue shall be the United States District Court for the Southern District of New York, or the Supreme Court of the State of New York, in this city of New York, in the United States of America. If the transaction was processed by Dutch company Hotmart B.V., the exclusive venue shall be the courts of the City of Amsterdam in the Netherlands.

Dkt. No. 30-2, § 13.1.

Plaintiffs argued that the suit was properly filed in this district for two reasons: *first*, because they never agreed to the Terms of Use or the forum selection clause contained therein; *second*, because the claims relate to "specific transactions" that were, at least arguably, processed by Launch Pad, which means they must be heard in this District.

In this Court's May 12, 2025 decision, I rejected Plaintiffs' first argument and held that their claims were subject to the forum selection clause found in Hotmart's Terms of Use. *See Hoar I*, 2025 WL 1380994, at *5-7. However, I agreed with Plaintiffs that their claims relate to specific transactions, because they concern the validity of discrete transactions. *Id.* at *8. The appropriate forum for this action therefore depends on which Hotmart entity processed the transactions at issue. If Launch Pad processed the transactions, any challenge to those transactions must be brought in

either this District or in the Supreme Court of the State of New York. If Hotmart B.V. processed the transactions at issue, the matter must be litigated in Amsterdam. As Plaintiffs admitted in their opposition brief, however, it was "impossible to distinguish between [Launch Pad] and Hotmart B.V. when determining which entity processed the transactions at issue" prior to discovery. Dkt. No. 49 at 12.

Because limited discovery was needed to determine whether the case was appropriately brought in this District, I gave the parties 45 days to take the needed discovery and denied Defendants' motion without prejudice to renewal on a fuller record. *See Hoar I*, 2025 WL 1380994, at *9.

Following the completion of discovery, Defendants again moved to dismiss Plaintiffs' FAC in its entirety. *See* Dkt. No. 70. That motion is presently before the Court.

## LEGAL STANDARD

### I. Motion to Dismiss for *Forum Non Conveniens*

"The proper procedural mechanism for enforcing a forum selection clause that points to a nonfederal forum is a motion to dismiss for *forum non conveniens*." *Cognizant Tech. Sols. Corp. v. Bohrer PLLC*, 2022 WL 1720319, at *3 n.2 (S.D.N.Y. May 27, 2022) (citing *Atlantic Marine Constr. Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 60 (2013)). *See also SingularDTV GmbH v. LeBeau*, 2022 WL 6771081, at *3 (S.D.N.Y. Oct. 11, 2022) (a court may treat a 12(b)(3) motion as a motion to dismiss for *forum non conveniens*). "A decision to grant or deny a motion to dismiss a cause of action under the doctrine of *forum non conveniens* lies wholly within the broad discretion of the district court." *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996). A court evaluating a motion to dismiss based on a forum selection clause typically relies on the pleadings and affidavits submitted in connection with the motion, though a court may also order limited discovery. *Martinez v.*

*Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014); *Rodriguez v. New York Bariatric Grp., LLC*, 2024 WL 1400305, at *3 (E.D.N.Y. Mar. 14, 2024), *report and recommendation adopted*, 2024 WL 1347525 (E.D.N.Y. Mar. 29, 2024). However, no disputed material fact should be resolved against the plaintiff without an opportunity to be heard. *See New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997).

## DISCUSSION

### I. Amsterdam is the Proper Forum for Plaintiff's Claims

Hotmart's Terms of Use provide that, "As to any dispute related to a specific transaction on the Platform, the exclusive venue to litigate such dispute depends on the specific Hotmart company that processed the relevant transaction." Dkt. No. 32-2, § 13.1. If Hotmart B.V. processed the transaction at issue, the matter must be litigated in Amsterdam. But if Launch Pad processed the transaction, any challenge to that transaction must be brought in either this District or in the Supreme Court of the State of New York.

Because neither Plaintiffs nor the Court had any way of knowing whether Launch Pad or Hotmart B.V. processed the transactions at issue,[2] I allowed the parties to take limited discovery. Despite the completion of discovery, however, the parties remain at an impasse. Defendants contend that Hotmart B.V. processed the transactions at issue, while Plaintiffs insist that every transaction except two were processed by Launch Pad. Plaintiffs do not dispute that two of Hoar's transactions, made on August 20, 2023, were processed by Hotmart B.V. using the Worldpay platform. *See* Dkt. No. 65 at 9; Dkt. No. 73 at 7. Disputes over those two transactions, at least, must be litigated in Amsterdam.

[2] The parties appear to agree that the transactions at issue were not processed in Brazil.

According to Defendants, discovery revealed that Hotmart B.V., not Launch Pad, processed the transactions at issue, because Hotmart B.V. performed all "payment processing" functions, including "(a) reviewing and approving Merchant applications for Payment Processing services; (b) transmitting sales transaction data or providing the means to transmit sales transaction data from Merchants to Acquirers or other Financial Institutions; (c) clearing, settling, or distributing proceeds of sales transactions from Acquirers or Financial Institutions to Merchants; or (d) processing chargebacks or returned remotely created payments orders or ACH debits." Dkt. No. 70 at 9 (citing *F.T.C. v. Acro Services LLC, et al.*, Dkt. 84 (M.D. Tenn. Apr. 28, 2023)).

In support of their Renewed Motion to Dismiss, Defendants filed the Declaration of Vander Pecequillo, the Global Compliance and Legal Manager of all Hotmart group companies. Dkt. No. 72 ("Pecequillo Decl."). The Pecequillo Declaration states the following:

For all transactions at issue – which is to say, all the transactions to which Plaintiffs were parties – Hotmart used one of two third-party companies: Adyen N.V. ("Adyen") and Worldpay Group Limited ("Worldpay"). Decl. at ¶ 10. These entities "interfaced with the Plaintiff's card networks, obtained transaction authorizations, and settled funds from the issuing banks into a Hotmart account." *Id.* Due to their respective internal structures and policies, Adyen and Worldpay deposit proceeds from Hotmart's transactions into different accounts. Worldpay deposits all proceeds directly into bank accounts owned and controlled by Hotmart B.V. in the Netherlands, whereas Adyen deposits proceeds into a bank account owned by Launch Pad in the United States. *Id.* at ¶ 11.

For transactions where Adyen deposits funds into Launch Pad's U.S. bank account, Launch Pad's role was strictly limited to receiving and forwarding funds to Hotmart B.V.'s account in the Netherlands. *Id.* at ¶ 12. Launch Pad did not retain any part of the proceeds, make any decisions

about whether or not to approve the transaction, interact with consumers or Creators, handle refunds or chargebacks, or determine payment distributions. *Id.* Likewise, Launch Pad did not transmit sales transaction data on behalf of merchants, review or approve merchant applications for payment processing services, transmit sales transactions data or provide the means to transmit such data from merchants to financial institutions, process chargebacks, or clear, settle, or distribute sales proceeds to merchants. *Id.* Launch Pad's sole function in connection with Plaintiffs' disputed purchases was to receive funds from Adyen and transfer those funds in their entirety to Hotmart B.V. *Id.* In that way, Launch Pad "operate[d] essentially as collection agent, temporarily holding funds solely for immediate transfer to Hotmart BV." *Id.* Had Hotmart used Worldpay to process the transactions, the proceeds from the transaction would not have gone through Launch Pad at all. *Id.* at ¶ 11.

Regardless of whether the funds initially flowed through Worldpay directly to Hotmart B.V. or through Adyen to Hotmart B.V., via Launch Pad, Hotmart B.V. performed many of the substantive processing functions involved in processing Plaintiffs' transactions. *Id.* at ¶ 13. These functions include "(a) maintaining relationships with Creators and consumers; (b) handling all customer service inquiries and complaints; (c) processing refund requests and issuing refunds to consumers; (d) managing chargeback disputes with card networks; (e) completing the final step of each transaction of calculating and distributing payments to Creators; and (f) maintaining transaction records and providing reporting to Creators." *Id.* at ¶ 13. Hotmart B.V. also performed the final step of payment processing: the final transfer of funds from the buyer's account to the seller's (i.e., the Creator) account, minus Hotmart B.V.'s processing fees. *Id.* at ¶ 14.

Plaintiffs do not dispute that Hotmart B.V. – not Launch Pad – performed what Defendant considers to be traditional "payment processing" functions, or at least many of them. Plaintiffs

argue, however, that "The litany of services that . . . Launch Pad does not perform" is not persuasive because "All that matters is that Launch Pad received funds directly from Plaintiffs." Dkt. No. 73 at 8. In their view, the term "processed" – which is not defined in the Terms of Use – should be given its "plain meaning," which, to Plaintiffs, is "receiving funds from customers at the time of purchase to process their payments." Dkt. No. 73 at 6.

Plaintiffs do not cite to a single case, dictionary entry, article, or any other source defining "payment processing" to mean "receiving funds from consumers at the time of purchase." Nor is the Court aware of any authority supporting Plaintiffs' definition. There is, however, ample authority for Defendants' definition.[3] *See, e.g., Fed. Trade Comm'n v. Cardiff*, 2022 WL 22935759, at *6 (C.D. Cal. Mar. 1, 2022) ("Payment Processing includes, among other things: (a) reviewing and approving Merchant applications for payment processing services; (b) providing the means to transmit sales transactions data from Merchants to Acquiring Banks or other Financial Institutions; (c) clearing, settling, or distributing proceeds of sales transactions from Acquiring Banks or Financial Institutions to Merchants; or (d) processing chargebacks or returned remotely created payment orders, remotely created checks, or ACH checks"); *Fed. Trade Comm'n v. Acro Servs. LLC et al.*, 2023 WL 12256463, at *5 (M.D. Tenn. Aug. 9, 2023) (same); *F.T.C. v. InterBill, Ltd.*, 2009 WL 10267504, at *1 (D. Nev. Apr. 30, 2009), *aff'd sub nom. F.T.C. v. Wells*, 385 F. App'x 712 (9th Cir. 2010) ("Payment processing may include, among other things, providing a merchant with the means to electronically accept and transmit consumer payments through any TPDFI; monitoring, tracking, and reconciling payments, returns, and charge-backs; providing pre-authorization, post-authorization, and refund services to merchants; and disbursing funds receipts

[3] *See also.* J.P.Morgan, *Understanding credit card & payment processing*, Mar. 14, 2025, https://www.jpmorgan.com/insights/payments/merchant-services/credit-card-and-paymentprocessing-guide-for-businesses (Defining payment processing as "a series of steps that facilitates electronic transactions between buyers and sellers," including authorization, authentication, clearing, and settlement).

to merchants"); *First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, 672 F. App'x 229, 231 (4th Cir. 2016) (payment processors "facilitate the communication and settlement of payment").

I agree with Defendants that the definition of "payment processing" – apparently a commonly used term in dealing with credit purchases – is not "receiving funds from customers at the time of purchase," as Plaintiffs insist. Rather, Defendants' definition of this term, which finds ample support in the industry and in case law, is the correct definition of the term. On the record before the Court, there is no evidence that Launch Pad did any of the things that qualify as "payment processing" – it simply disbursed funds to Hotmart B.V.[4] Therefore, the Launch Pad portion of the forum selection clause does not govern here.

Furthermore, if Plaintiffs' definition of "payment processing" were the correct definition of the term, Plaintiffs have not shown with any evidence that Launch Pad received any funds directly from Plaintiffs – or, for that matter, from any customers – whether at the time of purchase or at any time thereafter. It is the Court's understanding that Adyen, not Launch Pad, "interfaced with the Plaintiff's card networks, obtained transaction authorizations, and settled funds from the issuing banks into a Hotmart account." *Id.* "Collecting funds from plaintiffs" is what happens when one interfaces with the Plaintiffs' credit cards and settles with the bank that issued those cards. Ergo, under Plaintiff's own definition of "payment processing" – which, I emphasize, does not appear to be the correct definition – it would appear that Adyen, not Launch Pad, did the payment processing.

But I emphasize that Plaintiffs make no such argument. To the contrary: in connection with the two transactions that both sides agree were processed by Hotmart B.V., it was Worldpay, not Hotmart B.V., that "interfaced with the Plaintiff's card networks, obtained transaction

[4] One must, therefore, wonder how any transaction would be processed by Launch Pad, and so whether any transaction would fall within the portion of the forum selection clause that calls for litigation in the United States.

authorizations, and settled funds from the issuing banks into a Hotmart account." If Hotmart B.V. processed payment for those transactions, then it necessarily did so in connection with the transactions in which those same functions were performed by Adyen. Of utmost importance, in neither case did Launch Pad do anything to collect funds "directly" from customers.

Plaintiffs contend that Launch Pad must have directly received funds from customers because "Launch Pad is the company listed on the Adyen payment page" in documents produced by Defendant during discovery. Dkt. No. 73 at 7. Specifically, Defendants produced a screenshot of an "Adyen screen for a Hotmart account," with the title "Payout configurations." Dkt. No. 65 at 2; HOTMART_0000001. This payout configuration lists an account code with the value "HotmartUSacq." *Id.* Another screenshot produced by Defendant shows an image of an Adyen screen, which appears to be an account page for "HotmartUSacq." Dkt. No. 65 at 3; HOTMART_0000778. This screen, titled "Payout accounts," lists Launch Pad Payment Services Corporation as the payout account for HotmartUSacq, and shows the Account Holder is Launch Pad Payment Services Corporation. *Id.*

But these documents do not show that Launch Pad receives funds *directly* from customers. Rather, they show that Launch Pad received funds from *Adyen*. This is consistent with Defendant's sworn declaration attesting to the fact that only Adyen and Worldpay receive funds directly from customers – funds that flow from Adyen through Launch Pad before being transferred to Hotmart B.V. *See* Pecequillo Decl. ¶¶ 11-12.

In sum, Defendants have put forth ample evidence demonstrating that Hotmart B.V. – or Hotmart B.V. and Adyen – processed the transactions at issue, while Launch Pad did not. Plaintiffs' unsubstantiated allegations to the contrary fail to persuade. Since New York is the proper venue under the forum selection clause only if Launch Pad processed the transactions that are the subject

of the complaint, and there is no evidence that Launch Pad did any such thing, Amsterdam is the proper venue for any disputes relating to these transactions under the parties' agreed upon forum selection clause.

To the extent the parties disagree about whether certain transactions are "nonexistent" or "never went through," *see* Dkt. No. 70 at 11–13; Dkt. No. 73 at 9–11, such questions are best heard in Amsterdam.

**CONCLUSION**

The motion to dismiss at Dkt. No. 70 is GRANTED. Obviously, it is granted without prejudice to Plaintiffs' bringing their claims in the correct forum.

The Clerk of Court is respectfully requested to remove the motion at Dkt. No. 70 from the Court's list of open motions and to close the case.

This is a written opinion.

This constitutes the decision and order of the Court. It is a written decision.

Dated: July 9, 2026

U.S.D.J.

BY ECF TO ALL COUNSEL